## DISTRICT OF COLUMBIA v. BROOKE.

### ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 117. Argued April 7, 1909.—Decided May 17, 1909.

Where no objection was made to a technical defect in the return which could have been rectified by amendment had attention seasonably been called thereto, a party who, as disclosed by the record, was not prejudiced, cannot raise the objection at a later date.

*Quære,* whether there is any distinction between "a parcel" and "a letter" that renders defective a return showing service of statutory notice by mail.

A property owner cannot urge against a statutory drainage system the non-existence of the necessity for drainage, or the fact that he had adopted a system of his own which is either sufficient or better than that required by the law. Such a contention would deny to Congress the right to create any drainage system for the District of Columbia.

The mere existence of dwelling houses, whether occupied or not, indicates the necessity for drainage; and the owner is not deprived of his property without due process of law by a compulsory drainage act because the house happens to be unoccupied at the time.

The police power is one of the most essential of governmental powers,

at times one of the most insistent, and always one of the least limit-able.

A wide range of discretion is necessary to make legislation practical and the courts cannot be made a refuge from ill-advised, unjust or oppressive laws.

*Quære,* and not decided, whether there is any prohibition on Congress from enacting discriminatory legislation, and whether, in the absence of any express prohibition to that effect any prohibition can be implied, especially in regard to the exercise of police power in the District of Columbia. See *United States* v. *Delaware & Hudson Co.,* 213 U. S. 366, as to power of Congress to enact discriminatory legislation under the commerce clause of the Constitution.

If the power of Congress to enact discriminatory legislation as to the District of Columbia is limited either expressly or by implication, the prohibition cannot be stricter or more extensive than the due process and equal protection clauses of the Fourteenth Amendment are upon the States.

The Fourteenth Amendment does not deprive the States of the power of classification or require the classification to be logically or scientifically accurate; and sufficient practical reasons exist for a classification of resident and non-resident property owners in the enforcement of police regulations, provided that the act is impartial as between the classes. *Field* v. *Barber Asphalt Co.,* 194 U. S. 618.

While the enforcement of a statute enacted under the police power by criminal proceedings against resident owners, and by civil proceedings against non-resident owners is a discrimination, if, as in this case, it is justified by the circumstances it does not render the statute unconstitutional, nor is it so rendered by the fact that the remedy as to one class may be more efficient than the remedy as to the other.

In determining whether a statute is constitutional suppositions and questions which might possibly arise, but which have not arisen, will be answered when they do arise and affect the operation of the statute.

The act of May 19, 1896, c. 206, 29 Stat. 125, providing for the drainage of the District of Columbia, is not unconstitutional as depriving non-resident owners of their property without due process of law, or denying them the equal protection of the law on account of the different methods provided for enforcing the law against resident and non-resident owners.

29 App. D. C. 563, reversed.

THIS writ was issued to review a judgment of the Court of Appeals, affirming a judgment of the Supreme Court, quash-

ing and vacating certain proceedings taken for the assessment of a drainage tax upon the property of defendant in error under the authority of an act of Congress of May 19, 1896, "An act to provide for the drainage of lots in the District of Columbia." 29 Stat. 125, c. 206, May 19, 1896.

The act provides (1) that each original lot or subdivisional lot in the District of Columbia, where there is a public sewer, shall be connected with such sewer, and where there is a water main, connected with such water main, under certain conditions, which are enumerated. (2) It is made the duty of the Commissioners of the District to notify the owner or owners of every lot required by the act to be connected with a public sewer or water main, as the case may be, to so connect such lot, the work to be done in accordance with the regulations governing plumbing and house drainage in the District. (3) If the owner or owners neglect for thirty days after receipt of notice to make such connections he shall or they shall be deemed guilty of a misdemeanor, and be punished by a fine of not less than one dollar nor more than five dollars for each day of neglect. (4) If the owner be a non-resident of the District or cannot be found therein, the Commissioners shall give notice by publication twice a week for two weeks in some newspaper published in the city of Washington, to such owners, directing the connection of such lot with such sewer or such water main, as the case may be; "Provided, however, that if the residence or place of abode of the said non-resident lot owner be known or can be ascertained on reasonable inquiry, then, and in that case, a copy of the aforesaid notice shall be mailed to said non-resident, addressed to him in his proper name, at his said place of residence with legal postage prepaid; and in case such owner or owners shall fail or neglect to comply with the notice aforesaid within thirty days it shall be the duty of said Commissioners to cause such connection to be made, the expense to be paid out of the emergency fund; such expense, with necessary expense of advertisement, shall be assessed as a tax against such lot, which tax shall be carried on the regular tax

roll of the District of Columbia, and shall be collected in the manner provided for the collection of other taxes."

The petition of defendant in error for certiorari alleges that she is a resident of Maryland and was owner of the property against which the assessment was made at the time the connections were made by the Commissioners. She alleges that the assessment or tax is illegal in its entirety and beyond the power of the respondent (the District) to collect, in this, that the respondent had no jurisdiction of her property, "the said act of Congress being," she further alleges, "unconstitutional and void, because it discriminates between owners of real estate in said District; the said act not being uniform and capable of universal enforcement." She also alleges that the assessment or tax is void in its entirety, because the provisions of the fourth section of the act were not complied with in certain particulars which were set out. We do not give them, because two only are relied on, to wit, that the record does not show that notice was mailed to her as provided by § 4, and that the record fails to disclose that any nuisance existed on her property or that the means of drainage already there were unsanitary or insufficient.

A rule to show cause was issued, to which the District made return. The return was verified by the Commissioners. It denied some of the allegations of the petition, averred the constitutionality of the act and that due and legal proceedings were taken thereunder in making the connections and assessing the tax, including notice to petitioner. To the return were attached, to use the language of the Court of Appeals, "copies of such pertinent official papers and records as were in the custody of the District."

The writ was ordered to be granted. The return to the rule was made the return to the writ. Subsequently, the court, reciting that the cause having been argued by counsel and submitted to the court on the writ of certiorari, and the return thereto filed herein by respondent, adjudged the tax to be "illegal and void," and that it should be "quashed and held

for naught." The respondent was "forthwith directed to cancel the same on its tax records."

The judgment was affirmed by the Court of Appeals. 29 App. D. C. 563.

*Mr. F. H. Stephens*, with whom *Mr. E. H. Thomas* was on the brief, for plaintiff in error:

The discrimination in this law is not between the resident and non-resident but between those who can be found in the District and those who cannot be found in the District.

"The legislation in question in the present case is that of the Congress of the United States, and must be considered in the light of the conclusion, so often announced by this court, that the United States possess complete jurisdiction, both of a political and municipal nature, over the District of Columbia." *Parsons* v. *District of Columbia*, 170 U. S. 53.

"There is in this District no division of powers between the general and state governments. Congress has the entire control over the District for every purpose of government." *Kendall* v. *The United States*, 12 Pet. 619.

"Congress may legislate within the District, respecting the people and property therein, as may the legislature of any State over any of its subordinate municipalities." *Mattingly* v. *District of Columbia*, 97 U. S. 687.

The discrimination made in the statute is not between residents and non-residents. Section 4 of the statute, by its express terms, in the opening sentence distinguishes only between resident owners who can be found and resident or non-resident owners who cannot be found.

The test of the application of § 4 is whether the property owner can be found in the District, and that is the question presented in the record. Indeed, the opinion practically states this. It says:

"If he lives in the District or can be found here, his premises may not be molested but he may be fined. If he cannot be found here the object of the law is easily effectuated and

the expenses connected therewith become a charge upon the lot."

"The fact that the mode prescribed for the non-resident may be more inconvenient than that prescribed for the resident is not because the statute intends to make a discrimination, but because of the situation of the parties, and because, in the judgment of the law-making power, no other as effective way could be adopted for the protection of the public." *McFadden* v. *Blocker,* 58 L. R. A. 898.

If any distinction has been made by the Court of Appeals between residents and non-residents, such distinction does not exist under this statute because it treats absent residents and non-residents alike. There is no discrimination against the non-resident owner solely because he is a non-resident.

Even where personal liberty was involved a similar statute was held constitutional. *Frost* v. *Brisbin,* 19 Wend. 11. (This case has been cited and followed by the Court of Appeals in *Howard* v. *The Citizens' Bank & Trust Co.,* 12 App. D. C. 222, 235, and *Robinson* v. *Morrison,* 2 App. D. C. 105, 128.)

If it be thought that the discrimination is between residents and non-residents, nevertheless the discrimination is a reasonable one.

It is a matter of common knowledge in the legal profession, that statutes exist in nearly every State of this country permitting an attachment against the property of non-residents, real and personal, in actions *ex contractu,* before any adjudication of the debt is had, where none is permitted against the resident.

Also, laws discriminating against non-residents in other matters are not uncommon and the courts are constantly enforcing them. *Central Loan & Trust Co.* v. *Campbell Commission Co.,* 173 U. S. 84; *Allen* v. *Wyckoff,* 48 N. J. L. 90; *Chemung Canal Bank* v. *Lowery,* 93 U. S. 72; *Field* v. *Barber Asphalt Co.,* 194 U. S. 618; *Savannah &c., Ry.* v. *Savannah,* 198 U. S. 392; *Hawley* v. *Hurd,* 72 Vermont, 122; *McFadden* v. *Blocker,* 54 S. W. Rep. 872; *Tatem* v. *Wright,* 23 N. J. L.

429; *Connecticut* v. *Insurance Co.*, 73 Connecticut, 255; *Cribbs* v. *Benedict*, 64 Arkansas, 555.

There is no unlawful discrimination in the remedy which may be used to enforce the doing of the work prescribed by the act. All owners may be required to do such work. *Schmidt* v. *Indianapolis*, 168 Indiana, 631.

That the non-resident owner who cannot be found cannot be fined is of no importance.

The statute is effective and may be enforced against all persons by civil process, notwithstanding its penal provisions.

The fact that keeping a nuisance is a crime does not deprive a court of equity of the power to abate the nuisance. *Carllton* v. *Rugg* (Mass.), 5 L. R. A. 193.

The duty to make said connections having been imposed on all owners and the duty of requiring all owners to do the work having been cast on the Commissioners by the statute, why cannot the obligations of the statute be enforced by mandatory injunction?

A bill in equity is maintainable by the Commissioners of this District in their own names as Commissioners for a mandatory injunction to compel a person, whose license to temporarily occupy a portion of a public avenue and parking has been revoked, to remove a structure used as a refreshment stand from such avenue and parking. *McBride* v. *Ross*, 13 App. D. C. 576.

Also to remove a show-window. *Guerin* v. *Macfarland*, 27 App. D. C. 478.

The owner cannot remain silent while work is being done, of which he has notice, and then, after it is completed and his property benefited, be heard to complain that the proceedings are illegal.

"It is a general rule, now fully accepted in this State, that where the owner of property subject to assessment for public improvements, stands by and makes no objection to such improvements, which benefit his property, he may not deny the authority by which the improvements are made, or defeat

the assessments made against his property for the benefits derived; and that this is true both where the proceedings for the improvement are attacked for irregularity, and where their validity is denied, but color of law exists for the proceedings." *Commissioners* v. *Plotner*, 149 Indiana, 116, 119, cited in 2 Cooley (3d ed.), p. 1515, with many other cases from Indiana, Iowa, Kentucky, Massachusetts, Michigan, Missouri, Nebraska, New Jersey, New York, Oregon and Pennsylvania. Approved in *Wight* v. *Davidson*, 181 U. S. 371, 377.

*Mr John Ridout*, with whom *Mr. George C. Gertman* was on the brief, for defendant in error:

The act of Congress here in question is unconstitutional and void. This contention is based upon certain salient vices in the act which are apparent on its face, of which the principal are:

(*a*) The attempt to give controlling evidential effect to the mere existence of an improvement in case of improved property, and to the *ex parte* certificate of the health officer in the case of unimproved property, thus violating the "due process" clause of the Constitution.

(*b*) Because the act lacks the requisite uniformity inasmuch as it undertakes to provide one law for property of resident and another for property of non-resident owners in said District.

(*c*) Because the act is not capable of universal enforcement, and creates unequal burdens.

(*d*) Because the act is incapable of uniform enforcement as against all property in the District of Columbia.

Perusal of the act will clearly disclose the absolute lack of uniformity which is essential to the validity of such an act even though it be considered that it embodies a lawful exercise of the so-called police power, under the guise of which so many attacks have been made upon the due process and uniformity clauses in the Constitution.

The invalidity of such an act has been shown in the opinion

in *McGuire* v. *District of Columbia*, 24 App. D. C. 22. That case involved the validity of the snow and ice law which the court declared to be most beneficial in its purpose and which the court expressed its desire to sustain, yet it found itself unable to do so, and by unanswerable reasoning determined upon the grounds stated in the opinion that the act was unconstitutional. See, also, *Heylman* v. *District of Columbia*, 27 App. D. C. 563.

The act involved in this case is far more vicious in form.

If the purpose of the law is to be effective as against all the property coming within this act, then the means to make it so must, of course, be found in the act itself, and yet in certain situations neither the Commissioners nor anybody else would have any power to enforce such connection as against the resident owner who elects to pay the fine rather than comply with the notice. It is apparent that to make the legislation. valid, power should be given to the Commissioners to make the connection in all cases, and to pay the cost out of the emergency fund so that the act shall apply equally to all classes of property, and in the absence of such authority this act furnishes no uniform and effective means for its enforcement, and therefore it fails to subserve the purpose of its enactment. To put it differently, in the act under consideration there is apparently one law, namely, a civil one, for owners not found in the District, and another law, namely, a criminal one, for those who are found in the District. As to one class the Commissioners are given the power to make good the requirements of the law by making the connection, while as to the other class such power is withheld from the Commissioners.

If the language of the law is to be interpreted as though it read, that in case the owner or owners of a lot cannot be found in the District, leaving out the words "be a non-resident or non-residents of the District," which is the most favorable construction that can be given to the act, we have two separate and distinct classes of persons to which the law has an unequal application so far as their liability is concerned—to the

class found in the District, a criminal liability—to the class
not so found, a civil liability; and moreover, as already stated,
the law is capable of exact enforcement for the purpose for
which it was enacted as to the class of owners not found in
the District, while the contrary is true as to those found
therein.

Mr. Justice McKenna, after making the foregoing state-
ment, delivered the opinion of the court.

Defendant in error, to sustain her contention that the record
does not show notice to her of the proposed work, says that
it shows only that a "parcel" was mailed to her, not a letter,
and that the contents of the parcel are not disclosed. To the
extreme technicality of this contention the Court of Appeals
answered that no objection was made to the return, and that
it averred that the officers and agents of the District made
diligent search for defendant in error in the District, and that
she could not be found there, and that plaintiff in error be-
lieved that she was a citizen and resident of the State of Mary-
land. The court also pointed out that the return alleged that
notice was given to her by publication, as required by the
act of Congress, and by registered letter, postage prepaid,
which was received by her. A registry return receipt, with her
signature attached thereto, was made part of the return.
Commenting on this, the court said that if there was a defect
in the return it was purely technical, and could have been
corrected. "Upon the granting of the writ," the court ob-
served, "had objection been made to the adoption by the
Commissioners of their preliminary return, the court un-
doubtedly would have permitted an amendment to the record
for the purpose of supplying the defects now complained of by
petitioner [defendant in error here.] Having then made no
objection to the form of the return, it is too late to do so now."
If we could concede that the record justifies the distinction
made by defendant in error between a parcel and a letter, we
should adopt without hesitation the reply made by the Court

of Appeals to the contention based on that distinction, or upon any defect in the return, which could have been removed if objection had been seasonably made.

The second contention of defendant in error is that the record fails to disclose that any nuisance existed on her property, or that the means of drainage already there was unsanitary or insufficient, or that any necessity existed for making the connection. This contention seems to be made in this court for the first time. It certainly received no notice from the Court of Appeals, and the fact that it assumes that there was means of drainage on defendant in error's lot is not alleged in her petition. But suppose the fact had been alleged, a property owner cannot urge against the drainage system of the District that he had adopted a system of his own and challenge a comparison with that of the District, and obey or disobey the law according to the result of the comparison. The contention virtually denies any power in Congress to create a system of drainage to which a lot owner must conform.

Finally, defendant in error attacks the validity of the law, and bases the attack, to use her words, "upon certain salient vices in the act which are apparent on its face, of which the principal are—

"(a) The attempt to give controlling evidential effect to the mere existence of an improvement in case of improved property, and to the *ex parte* certificate of the health officer in the case of unimproved property, thus violating the 'due process' clause of the Constitution.

"(b) Because the act lacks the requisite uniformity, inasmuch as it undertakes to provide one law for property of resident and another for property of non-resident owners in said District.

"(c) Because the act is not capable of universal enforcement, and creates unequal burdens.

"(d) Because the act is incapable of uniform enforcement as against all property in the District of Columbia."

The first objection was not expressed in the petition nor

made in the lower courts, and we might therefore decline to entertain it. At best, defendant in error can only be heard against "the evidential effect of the mere existence of an improvement," because her property does not come within the category of unimproved property. Her improvements are dwelling houses, and their mere existence indicated the necessity for drainage. That they may sometimes be vacant is unimportant. What rights owners of lots differently improved or owners of unimproved property may have is of no concern of defendant in error. Her contention, therefore, that the act deprives her of due process of law is unsound.

The other objections expressed the same fundamental idea, to wit, that the act discriminates between resident and non-resident owners of property, and because it does it is void. The Court of Appeals yielded to this contention, following the authority of *McGuire* v. *District of Columbia*, 24 App. D. C. 22.

The defendant in error asserts this discrimination and argues its consequences at some length, but does not refer to any provision of the Constitution of the United States which prohibits Congress from enacting laws which discriminate in their operation between persons or things. If there is no express prohibition of such power, may prohibition be implied from our form of government? Upon that proposition we need not express an opinion. If prohibition exists it must rest on all the powers conferred by the Constitution. This court, however, has just held, in the case of *United States* v. *Delaware & Hudson Co.*, 213 U. S. 366, that Congress may in the exercise of the powers to regulate commerce among the States, discriminate between commodities and between carriers engaged in such commerce. And it was said that the assertion that "injustice and favoritism" might "be operated thereby," could "have no weight in passing upon the question of power." In the case at bar we are dealing with an exercise of the police power, one of the most essential of powers, at times the most insistent, and always one of the least limitable of the powers of government.

However, the question of the power of Congress, broadly considered, to discriminate in its legislation is not necessary to decide, for whether such power is expressly or impliedly prohibited, the prohibition cannot be stricter or more extensive than the Fourteenth Amendment is upon the States. That Amendment is unqualified in its declaration that a State shall not "deny to any person within its jurisdiction the equal protection of the laws." Passing on that Amendment, we have repeatedly decided—so often that a citation of the cases is unnecessary—that it does not take from the States the power of classification. And also that such classification need not be either logically appropriate or scientifically accurate. The problems which are met in the government of human beings are different from those involved in the examination of the objects of the physical world and assigning them to their proper associates. A wide range of discretion, therefore, is necessary in legislation to make it practical, and we have often said that the courts cannot be made a refuge from ill-advised, unjust or oppressive laws. *Billings* v. *Illinois*, 188 U. S. 97; *Heath & Milligan Manufacturing Co. et al.* v. *Worst*, 207 U. S. 338. In the light of these principles the contentions of defendant in error must be judged. The act in controversy makes a distinction in its provision between resident and non-resident lot owners, but this is a proper basis for classification. Regarded abstractly as human beings, regarded abstractly as lot owners, no legal difference may be observed between residents and non-residents, but regarded in their relation to their respective lots under regulating laws, the limitations upon jurisdiction, and the power to reach one and not the other, important differences immediately appear. We said in *St. John* v. *New York*, 201 U. S. at pages 633, 637, not only the purpose of a law must be considered, but the means of its administration—the ways it may be defeated. Legislation, to be practical and efficient, must regard this special purpose as well as the ultimate purpose. This was in effect repeated in *Field* v. *Barber Asphalt Co.*, 194 U. S. 618, where a privilege to protest

against a street improvement given by the statute assailed to resident property owners and denied to non-resident property owners, was sustained, and the statute held not to violate the equality clause of the Fourteenth Amendment. See *Travellers Ins. Co.* v. *Connecticut,* 185 U. S. 364.

It is not contended that the act of Congress is not impartial within the classes. The act treats all resident lot owners alike and all non-residents alike. It is contended that there is a difference in the procedure prescribed in case of default, and non-resident lot owners are thereby discriminated against, though they stand in the same relation to the purpose of the law as resident lot owners. In other words, non-resident lot owners are not treated the same as resident owners in like situation, because against resident owners the coercion of the law is by criminal punishment, while against non-resident owners the remedy is by civil proceedings, the District does the work that the non-resident owners neglect and charges the expense thereof on their property. This is a distinction, a discrimination it may be called, but it has even more justification than that sustained in *Field* v. *Barber Asphalt Co., supra.* The statute under consideration in the case at bar enjoins a duty on both resident and non-resident lot owners, a duty necessary to be followed to preserve the health of the city. There is a difference only in the manner of enforcing it, a difference arising from the different situation of the lot owners, and therefore competent for Congress to regard in its legislation. In other words, under the circumstances presented by this record the distinction between residents and non-residents is a proper basis for classification. It might not be under other circumstances. *Blake* v. *McClung,* 172 U. S. 239; *S. C.,* 176 U. S. 59; *Sully* v. *American National Bank,* 178 U. S. 289.

That the remedy in the statute under consideration against non-resident owners may be more efficient—more completely fulfill the purpose of the law—than that against resident owners, is beside the question. Indeed, the fact may be disputed. Usually the most emphatic and efficient enforcement

of a law is through criminal prosecution.  At any rate, it is
hard to believe that there will be many resident lot owners
whose delinquency under the statute will be so resolute that it
will stand against repeated charges of crime and the conse-
quent penalties.  But, be that as it may, it was for Congress
to decide whether such possibility should be risked rather than
incur the greater possibility of more delinquents in so numer-
ous a class as resident lot owners if the District was to first
bear the expense of the drainage and collect it afterward by
civil proceedings.

Other criticisms are made of the law to display what is al-
leged to be its lack of uniformity.  For instance, a supposition
is made of tenants in common, some of whom are residents
and the others non-residents, and the possible difficulties that
may arise from such ownership under the act, and it is asked
if the property belongs to resident minors or insane persons,
or persons under legal disabilities, can the act be enforced
against them or against their property?  To these suppositions
and questions we answer that it will be time enough to reply
when a case arises in which they are presented, and to de-
termine then the operation of the act upon the persons enu-
merated.

*Judgment reversed with directions to reverse the judgment of
the Supreme Court, quashing the tax, and to dismiss the
petition.*

MR. JUSTICE WHITE did not hear the argument and took no
part in the decision.