## UNITED STATES v. BILLINGS.

### (Circuit Court, S. D. New York. March 8, 1911.)

1. TAXATION (§ 16*)—POWERS OF UNITED STATES—CONSTITUTIONAL LIMITATIONS.

    In the exercise of the taxing power by the United States, so long as Congress follows the particular constitutional provisions relating to the levying of taxes, there are no limitations upon its right to discriminate in selecting the subjects of taxation.

    [Ed. Note.—For other cases, see Taxation, Dec. Dig. § 16.*]

2. CONSTITUTIONAL LAW (§ 283*)—TONNAGE TAX ON USE OF FOREIGN-BUILT YACHTS—DUE PROCESS.

    Tariff Act Aug. 5, 1909, c. 6, § 37, 36 Stat. 112 (U. S. Comp. St. Supp. 1909, p. 1057), which imposes an annual tonnage duty "upon the use of every foreign-built yacht, pleasure boat or vessel, not used or intended to be used for trade, now or hereafter owned or chartered for more than six months by any citizen or citizens of the United States," is within the constitutional powers of Congress. The tax, being an excise, geographically uniform and within the special limitations regulating the exercise of the taxing power, cannot be held invalid as in violation of the due process of law clause of the fifth amendment because it discriminates between owners of foreign and home built yachts.

    [Ed. Note.—For other cases, see Constitutional Law, Dec. Dig. § 283.*]

3. TAXATION (§ 16*)—POWERS OF UNITED STATES—PROPERTY WITHOUT TERRITORIAL JURISDICTION.

    The rule that the power of a state to impose taxes is limited with respect to tangible personal property to property within its territorial jurisdiction, does not apply in the same degree to federal legislation, since the underlying principle on which such rule is based is that taxes are the consideration for protection afforded, and the federal government, unlike that of a state, has power to afford protection to the persons and property of its citizens although they may be domiciled and the property located in a foreign country.

    [Ed. Note.—For other cases, see Taxation, Dec. Dig. § 16.*]

4. SHIPPING (§ 7*)—TONNAGE TAX ON USE OF FOREIGN-BUILT YACHTS—CONSTRUCTION OF STATUTE.

    Tariff Act Aug. 5, 1909, c. 6, § 37, 36 Stat. 112 (U. S. Comp. St. Supp. 1909, p. 1057), which imposes an annual tonnage tax upon the use of every foreign-built yacht or pleasure boat, owned or chartered for more than six months by a citizen or citizens of the United States, in the absence of language clearly expressing a contrary intention, must be presumed to apply only to subjects within the territorial jurisdiction of the United States, and to bring a case within the statute it must be shown

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that a foreign-built yacht is used, to some extent at least, within the limits of the United States, and especially where the owner, although a citizen of the United States, is domiciled in a foreign country.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 7.*]

5. SHIPPING (§ 7*)—TONNAGE TAX ON USE OF FOREIGN-BUILT YACHTS—CONSTRUCTION OF STATUTE.

Tariff Act Aug. 5, 1909, c. 6, § 37, 36 Stat. 112 (U. S. Comp. St. Supp. 1909, p. 1057), imposes a tonnage tax to be collected annually on the 1st day of September "upon the use of every foreign-built yacht, pleasure boat or vessel, not used or intended to be used for trade, now or hereafter owned or chartered for more than six months, by any citizen or citizens of the United States." *Held*, that the limitation of six months applied only to yachts chartered, and no particular length of ownership was necessary to subject the owner to the tax; that it was the intention of the act that the tax should be levied on the 1st day of every September after its enactment and the full annual tax was therefore collectible on September 1, 1909, and that the tax was not on the actual use but on the privilege of using, and was collectible although a yacht had been out of commission during the entire preceding year.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 7.*]

6. TREATIES (§ 11*)—EFFECT AS TO INCONSISTENT LAWS—SUBSEQUENT STATUTES.

A treaty with a foreign country cannot be invoked by an individual to defeat liability for a tax imposed by a subsequent act of Congress.

[Ed. Note.—For other cases, see Treaties, Cent. Dig. § 11; Dec. Dig. § 11.*]

7. SHIPPING (§ 7*)—TONNAGE TAX ON USE OF FOREIGN-BUILT YACHTS—METHOD OF ENFORCEMENT.

The tonnage tax imposed on the use of foreign-built yachts by Tariff Act Aug. 5, 1909, c. 6, § 37, 36 Stat. 112 (U. S. Comp. St. Supp. 1909, p. 1058), may be collected by an action in the nature of debt against the yacht owner.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 7.*]

8. STATUTES (§ 6*)—CONSTITUTIONALITY OF REVENUE ACT—AMENDMENTS PROPOSED IN SENATE.

That a provision of a revenue act originating in the House of Representatives was added as an amendment in the Senate, and afterward concurred in by the House, does not render it invalid as a bill for raising revenue originating in the Senate, in violation of Const. art. 1, § 7.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 5; Dec. Dig. § 6.*]

9. CONSTITUTIONAL LAW (§ 251*)—"DUE PROCESS OF LAW."

"Due process of law," guaranteed in both the fifth and fourteenth amendments to the Constitution, means the law of the land. The guaranty implies the administration of equal laws according to established rules by competent tribunals having jurisdiction and proceeding upon notice and hearing.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 732; Dec. Dig. § 251.*

For other definitions, see Words and Phrases, vol. 3, pp. 2227–2256; vol. 8, p. 7644.]

At Law. Actions by the United States against Cornelius K. G. Billings, against James Gordon Bennett, against Harriet Goelet, against H. Clay Pierce, and against Roy A. Rainey. On demurrer to answer in each case. Demurrers overruled as to defendants Bennett and Goelet, and sustained as to other defendants.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Henry A. Wise, U. S. Atty.

Guthrie, Bangs & Van Sinderen, for defendants Billings, Bennett, Goelet, and Pierce.

C. Andrade, Jr., for defendant Rainey.

NOYES, Circuit Judge. These actions are brought by the United States to recover annual tonnage tax upon the use of foreign-built yachts under section 37 of the tariff act of 1909, which is printed in full in the footnote.[1]

The complaint in each action alleges in substance that the defendant therein was, on September 1, 1909, a citizen of the United States and the managing owner of a foreign-built yacht and that the tax in question was duly levied and has never been paid.

The defendants have severally answered, setting up separate defenses and each presenting defenses of a different nature. These defenses go both to the constitutionality of the statute and its application upon different states of facts, so that upon the several demurrers of the government the questions of constitutionality and interpretation are clearly presented and are presented in different phases. The important questions so raised may properly be considered in this order:

(1) Is the statute so discriminatory in its provisions as to violate the fifth amendment to the Constitution of the United States?[2]

[1] "There shall be levied and collected annually on the first day of September by the collector of customs of the district nearest the residence of the managing owner, upon the use of every foreign-built yacht, pleasure-boat or vessel, not used or intended to be used for trade, now or hereafter, owned or charted for more than six months by any citizen or citizens of the United States, a sum equivalent to a tonnage tax of seven dollars per gross ton.

"In lieu of the annual tax above prescribed, the owner of any foreign-built yacht, pleasure-boat or vessel above described may pay a duty of thirty-five per centum ad valorem thereon, and such yacht, pleasure-boat or vessel shall be subject to all the requirements prescribed by sections forty-two hundred and fourteen, forty-two hundred and fifteen, forty-two hundred and seventeen, and forty-two hundred and eighteen of the Revised Statutes and Acts amendatory thereto in the same manner as if said yacht had been built in the United States, and shall be subject to tonnage duty and light money only in the same manner as if said yacht had been built in the United States.

"So much of section five of chapter two hundred and twelve of the laws of nineteen hundred and eight, approved May twenty-eighth, nineteen hundred and eight, as relates to yachts built outside the United States and owned by citizens of the United States is hereby repealed.

"This section shall not apply to a foreign-built vessel admitted to American registry."

[2] Questions under other constitutional provisions are considered in the briefs. Thus the brief of the government contains an elaborate consideration of the question whether the annual tonnage tax is an excise or a direct tax within the meaning of the Constitution. The briefs of the defendants, however, apparently concede that the tax is an excise and would be valid if it were not discriminatory and did not affect property outside the jurisdiction in violation of the fifth amendment. Consideration of the question whether the tax is a direct tax is, therefore, unnecessary in this opinion, although by omitting to discuss it I would not seem to indicate that I have any doubt that the government's contention in the matter is correct.

One of the defendants raises another constitutional question by contending that the 35 per cent. ad valorem duty which the owners of foreign-built yachts

(2) Does the statute conflict with the fifth amendment by levying taxes on property situated *outside* the territorial jurisdiction of the United States?

(3) Was the annual tax properly leviable on September 1, 1909?

(4) How far is it necessary to show actual use of the yachts during the year prior to September 1, 1909?

(5) Can the owner of a foreign-built yacht acquire immunity under an earlier treaty which will exempt him from the operation of the statute?

With respect to the first question: It is pointed out by the defendants that the test of the application of the statute is (1) the place or origin of the yacht and (2) the citizenship of the owner or charterer and it is contended that the "due process of law" clause of the fifth amendment requires Congress, if it desire to tax yachts, to make an enactment of an essentially different nature applicable to all yachts of similar character and whether owned by citizens or resident aliens. It is urged, in support of this contention, that there is no real difference between the use of a foreign-built yacht and the use of a similar vessel built in the United States; nor between the use of such a vessel by a citizen and by a resident alien, and that the classifications made by the statute are arbitrary, discriminatory and without any basis.

On the other hand, it is stated by the government that the object which Congress sought to accomplish was the protection of the American shipbuilders, and the promotion of American shipbuilding by forcing the American citizens to buy yachts built in this country. And it is not obvious how taxing the use of foreign-built yachts already purchased would promote American industries, and it is said that Congress made the statute applicable to past purchases in order that the owners of all foreign-built yachts should be taxed equally.

If the validity of this legislation depended upon satisfying this court of its wisdom, fairness and justness, other reasons and facts than those thought necessary to be included in the government's brief would be required. But as the Supreme Court has said (District of Columbia v. Brooke, 214 U. S. 138, 29 Sup. Ct. 560, 53 L. Ed. 941) :

"The courts cannot be made a refuge from ill advised, unjust or oppressive laws."

The only inquiry to be considered here is whether this statute deprived these defendants of their property without due process of law.

have the privilege of paying in lieu of the annual tonnage tax, is a direct tax and is invalid because not apportioned among the states. This contention is at least doubtful. The owner is not required to pay this duty. He is merely given the option of paying it. In its nature it would seem to be a duty on imports and such duties are not held to be direct taxes requiring apportionment. But it is unnecessary to pass upon this question. These actions are for the recovery of the annual tonnage tax and the validity of the ad valorem tax is not involved. The provisions concerning that tax are separable from those concerning the annual tax. The one is not dependent upon the other and there is no indication that Congress would not have adopted the one without the other. Under such conditions it is well settled that unconstitutional provisions may be separated from legal provisions and effect be given to the latter.

[9] "Due process of law"—guaranteed in both the fifth and fourteenth amendments to the Constitution—means the law of the land. The guaranty implies the administration of equal laws according to established rules by competent tribunals, having jurisdiction and proceeding upon notice and hearing. It affects the operations of the different departments of the government. It prevents arbitrary executive action. It applies to judicial proceedings and requires orderly procedure. It operates against confiscatory legislative enactments. It safeguards the rights of the citizen even in the exercise of the paramount rights of the state.

The power of taxation is a paramount right incident to the sovereignty of every state and is exercised by the legislative department of the government. It rests upon the theory that the public welfare requires the sacrifice of private rights and that the value of taxes exacted from the citizen is returned to him in the benefits conferred by the government. The power to tax is broad. Chief Justice Marshall said in McCulloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579:

"The people of a state, therefore, give to their government a right of taxing themselves and their property, and as the exigencies of government cannot be limited, they prescribe no limits to the exercise of this right, resting confidently on the interest of the legislator, and on the influence of the constituents over their representatives, to guard them against its abuse."

But broad as is the taxing power of the federal government, there are constitutional limitations attached to its exercise. The special restraints imposed by the Constitution are that no capitation or direct tax shall be laid without apportionment; that no tax or duty shall be laid upon any article exported from a state, and that "all duties, imposts and excises shall be uniform throughout the United States." Const. art. 1, § 8, par. 1; § 9, pars. 4 and 5. There are also undoubtedly general limitations imposed by the due process of law clause of the fifth amendment. Due process of law requires at least the exercise of the taxing power only for public purposes and regularity in the processes for the assessment and collection of taxes.[3]

These defendants, however, as I have already indicated, contend for a far broader application of the due process clause than that just pointed out, and, in effect, urge that this court should declare the statute in question unconstitutional, because the selection for taxation of the use of foreign-built yachts is arbitrary and discriminatory. They say that that which is essential to due process of law in taxation, whether by the nation or the state, is "that a tax law must apply impartially to all persons in the same class, that is, similarly situated, and that it must operate equally and uniformly upon all persons in like circumstances and under like conditions."

If the fifth amendment were as broad as the fourteenth, there would be more ground for these contentions of the defendants. But

[3] There will be occasion later to consider how far the principle that the due process clause in the fourteenth amendment prevents a state from taxing property located outside its territorial jurisdiction applies in the consideration of acts of Congress in relation to the fifth amendment.

the fourteenth amendment differs from the fifth amendment in that in addition to the "due process of law" clause, it contains the provision that no state shall "deny to any person within its jurisdiction the equal protection of the laws." This provision is directly aimed at discriminatory legislation. Its object is to secure equality and generality in state statutes. Under this clause many decisions, both federal and state, have been rendered holding different state enactments unconstitutional as lacking the character of generality and as containing discriminatory classifications. The Supreme Court of the United States, however, has never held that the equality clause adds nothing to the scope of the fourteenth amendment so that decisions under it have controlling force in determining the application of the fifth. It is true that it seems to be assumed by text-writers and that there are dicta in the decisions to the effect that discriminatory legislation is as much in conflict with the due process clause as with the equality clause. [1] But however this may be with respect to the exercise of other powers, I am satisfied that in the exercise of the taxing power, so long as Congress follows the particular constitutional provisions relating to the levying of taxes, there are no limitations upon its right to discriminate in selecting the subjects of taxation.

In McCray v. United States, 195 U. S. 27, 59, 61, 63, 24 Sup. Ct. 769, 778, 779, 49 L. Ed. 78, in sustaining the validity of the Oleomargarine Act, the Supreme Court, through the present Chief Justice, said:

"Since, as pointed out in all the decisions referred to, the taxing power conferred by the Constitution knows no limits except those expressly stated in that instrument, it must follow, if a tax be within the lawful power, the exertion of that power may not be judicially restrained because of the results to arise from its exercise. * * * Whilst undoubtedly both the fifth and tenth amendments qualify, in so far as they are applicable, all the provisions of the Constitution, nothing in those amendments operates to take away the grant of power to tax conferred by the Constitution upon Congress. The contention on this subject rests upon the theory that the purpose and motives of Congress in exercising its undoubted powers may be inquired into by the courts, and the proposition is therefore disposed of by what has been said on that subject. * * *

"Conceding merely for the sake of argument that the due process clause of the fifth amendment, would avoid an exertion of the taxing power which, without any basis for classification, arbitrarily taxed one article and excluded an article of the same class, such concession would be wholly inapposite to the case in hand. The distinction between natural butter artificially colored, and oleomargarine artificially colored so as to cause it to look like butter, has been pointed out in previous adjudications of this court. * * * That provision (the fifth amendment), as we have previously said, does not withdraw or expressly limit the grant of power to tax conferred upon Congress by the Constitution. From this it follows, as we have also previously declared, that the judiciary is without authority to avoid an act of Congress exerting the taxing power, even in a case where to the judicial mind it seems that Congress had in putting such power in motion abused its lawful authority by levying a tax which was unwise or oppressive, or the result of the enforcement of which might be to indirectly affect subjects not within the powers delegated to Congress."

And in the very recent case of District of Columbia v. Brooke, 214 U. S. 138, 149, 29 Sup. Ct. 560, 563, 53 L. Ed. 941, Mr. Justice McKenna, said:

"The other objections expressed the same fundamental idea, to wit, that the act discriminates between resident and nonresident owners of property, and because it does it is void. * * *

"The defendant in error asserts this discrimination and argues its consequences at some length, but does not refer to any provision of the Constitution of the United States which prohibits Congress from enacting laws which discriminate in their operation between persons or things. If there is no express prohibition of such power, may prohibition be implied from our form of government? Upon that proposition we need not express an opinion. If prohibition exists it must rest on all powers conferred by the Constitution. This court, however, has just held, in the case of United States v. Delaware and Hudson Co., 213 U. S. 366, 29 Sup. Ct. 527, 53 L. Ed. 836, that Congress may, in the exercise of the powers to regulate commerce among the states, discriminate between communities and between carriers engaged in such commerce. And it was said that the assertion that 'injustice and favoritism' might 'be operated thereby,' could 'have no weight in passing upon the question of power.' In the case at bar we are dealing with an exercise of the police power, one of the most essential of powers, at times the most insistent, and always one of the least limitable of the powers of government." [4]

It is clear that Congress, in enacting the statute in question, acted within all the limitations of the Constitution regulating the exercise of the taxing power. As we have seen, the tax is an excise and not a direct tax. It also possesses the uniformity required by the constitutional provision. It is assessed equally on all citizens throughout the United States who own or charter foreign-built yachts. It is geographically uniform and that which the Constitution prescribes is geographical and not intrinsic uniformity. This principle has been consistently adhered to in a series of decisions: Patton v. Brady Executrix, 184 U. S. 608, 22 Sup. Ct. 493, 46 L. Ed. 713; Knowlton v. Moore, 178 U. S. 41, 20 Sup. Ct. 747, 44 L. Ed. 969; Pollock v. Farmers' Loan & In. Co., 157 U. S. 429, 15 Sup. Ct. 673, 39 L. Ed. 759; Head Money Cases, 112 U. S. 580, 5 Sup. Ct. 247, 28 L. Ed. 798; United States v. Singer, 15 Wall. 111, 21 L. Ed. 49.

[2] The statute, then, being in accord with all the special constitutional limitations, I should be unable to hold it in violation of the fifth amendment even if I were of the opinion that there exists no fair and reasonable basis for the discrimination which it makes between the owners of foreign and home built yachts, and even if I were of the opinion that a similar discrimination would bring a state statute into conflict with the fourteenth amendment. It is my opinion that Congress had the right to select a certain class of property, to wit, foreign-built yachts, and to tax the use thereof by all citizens owning or chartering the same, and that such a tax cannot be set aside by the courts because it is held to be unreasonably discriminatory. But it is unnecessary to go so far in order to decide this case. Whatever may be said of the justness of the statute, it cannot be said that the

[4] The court further said in this opinion that while it was not necessary to decide whether Congress had, broadly considered, the power to discriminate, no stricter limitation upon its power was possible, in any event, than that imposed upon the states by the fourteenth amendment.

discrimination which it makes against citizens owning foreign-built yachts, is without any substantial basis. Taxing the use of foreign-built yachts may tend, in some degree, to protect and promote American shipbuilding. Citizens stand in a position different from aliens,· whether resident or nonresident. Regarding the statute from any point of view I cannot say that it is unconstitutional class legislation.

[3] The next inquiry is whether the statute conflicts with the due process of law clause by levying taxes on property outside the jurisdiction of the United States.

· The answers of the defendants Goelet and Bennett allege that their yachts were not within the jurisdiction of the United States for several years prior to the passage of the statute and that each had acquired a permanent situs in a foreign country. The question of the defendant Goelet further alleges that she was and is domiciled in France, and is now a resident of that country.

. The first question raised by the demurrers to these answers is a constitutional one; the second, one of interpretation. Assuming that the statute applies to the yachts of these defendants, is it constitutional? Should it be so construed as to apply to them?

The constitutional question presented is, as already stated, another phase of that just considered, viz., the relation of the due process clause to this statute. If it be unconstitutional as taxing property outside the jurisdiction of the United States, it is so because the levy of a tax upon such property denies due process of law to the owner thereof.

As we have seen, the theory upon which taxes are levied is that the taxpayer receives back in benefits from the government the value of the taxes exacted from him. Theoretically, the benefit received should be in exact proportion to the obligation imposed. As a corollary to these propositions it is held that the power of the state to impose taxes is limited to property within the territorial jurisdiction, because only with respect to such property is the state in a position to afford the protection and benefit due as consideration for the tax imposed. These principles are clearly stated in the opinion of Mr. Justice Brown in Union Transit Co. v. Kentucky, 199 U. S. 194, 202, 204, 26 Sup. Ct. 36, 37, 50 L. Ed. 150:

"The power of taxation, indispensable to the existence of every civilized government, is exercised upon the assumption of an equivalent rendered to the taxpayer in the protection of his person and property, in adding to the value of such property, or in the creation and maintenance of public conveniences in which he shares, such, for instance, as roads, bridges, sidewalks, pavements, and schools for the education of his children. If the taxing power be in no position to render these services or otherwise to benefit the person or property taxed, and such property be wholly within the taxing power of another state, to which it may be said to owe an allegiance, and to which it looks for protection, the taxation of such property within the domicile of the owner partakes rather of the nature of an extortion than a tax, and has been repeatedly held by this court to be beyond the power of the Legislature and a taking of property without due process of law. * * *

"It is also essential to the validity of a tax that the property shall be within the territorial jurisdiction of the taxing power. . Not only is the operation of state laws limited to persons and property within the boundaries of the state, but property, which is wholly and exclusively within the jurisdiction

of another state, receives none of the protection for which the tax is supposed to be the compensation."

In the application of these principles distinctions are necessarily drawn according to the different kinds of property. Real estate is taxed at its actual situs, irrespective of the owner's domicile. The maxim mobilia sequuntur personam may determine the situs of intangible personal property for purposes of taxation.

But in respect of tangible personal property the law of the owner's domicile has yielded to the law of the place where the property is kept or used. So far, at least, as the states are concerned, tangible personal property may be regarded as separated from its owner and may be taxed where located although that may not be the place of the owner's residence or domicile. And the converse of the proposition is equally true, that such property outside the boundaries of the state may not be subjected to taxation there.[5]

Upon these principles it is clear that foreign-built yachts having a permanent situs in a state other than that of their owner's domicile are with respect to state legislation subject to the lex situs rule. Such vessels are not entitled to be registered or enrolled, and can only become "vessels of the United States" by special acts of Congress. They stand for the purposes of taxation in the same position as other tangible personal property. A state tax upon a foreign-built yacht used only in another state or in foreign waters would unquestionably be invalid, irrespective of the owner's residence or domicile.

The question then is whether the principles which prevent state tax legislation from having extraterritorial force apply in the same degree to federal legislation. The underlying principle, as we have seen, is that taxes are the consideration for protection afforded, and it is contended by the government that while state tax laws may be invalid as affecting property outside the state because the state is powerless to furnish protection, yet that a national enactment cannot

[5] The lex situs rule with respect to tangible personal property should be stated in modified form when considering vessels registered under the laws of the United States when incidentally or temporarily in a state other than that of their home port. As said by the Supreme Court in Pullman's Car Co. v. Pennsylvania, 141 U. S. 18, 23, 11 Sup. Ct. 876, 878, 35 L. Ed. 613:

"Ships or vessels, indeed, engaged in interstate or foreign commerce upon the high seas, or other waters which are a common highway, and having their home port, at which they are registered under the laws of the United States, at the domicile of their owners in one state, are not subject to taxation in another state at whose port they incidentally and temporarily touch for the purpose of delivering or receiving passengers or freight. But that is because they are not, in any proper sense, abiding within its limits, and have no continuous presence or actual situs within its jurisdiction, and, therefore, can be taxed only at their legal situs, their home port and the domicile of their owners."

When, however, even a registered vessel has a continuous presence—an actual situs—in a state other than that of the owner's domicile or port of register, it is subject to taxation there. Old Dominion Steamship Co. v. Virginia, 198 U. S. 299, 25 Sup. Ct. 686, 49 L. Ed. 1059; Hays v. Pacific Mail Steamship Co., 17 How. 596, 15 L. Ed. 254. See, also, Ayer & Lord Co. v. Kentucky, 202 U. S. 409, 26 Sup. Ct. 679, 50 L. Ed. 1082; St. Louis v. Ferry Co., 11 Wall. 423, 20 L. Ed. 192.

fail for that reason because the United States government has power to afford protection to the persons and property of its citizens abroad. It is said that a nation has power to protect property beyond its territorial limits which no component part of it can have and, consequently, that limitations upon the taxing power of the states have no necessary effect upon the validity of the present statute.

I think it the better view that these contentions of the government are correct. The national government has a far-reaching arm. It may afford in many ways protection to the property of its citizens located in foreign countries. In case of injury it may demand indemnity from other nations. Congress has already enacted laws with respect to the issue of certificates of ownership and passports to unregistered vessels owned by citizens (Rev. St. § 4190 [U. S. Comp. St. 1901, p. 2836]) which might afford some protection in foreign countries, and it has, unquestionably, power to enact laws of much broader scope. I should be unable to hold that legislation clearly and unequivocally imposing taxes upon foreign-built yachts owned by citizens and located in foreign countries would be unconstitutional because by reason of the inability of the United States to afford protection to such property, there would be no consideration for the payment of such taxes, and the owner would be, consequently, deprived of his property without due process of law.

[4] But such a tax would be extraordinary in its nature. If imposed it should be by clear and express enactment. It ought not to depend upon any doubtful construction. If Congress desire to exercise the power of the national government to go beyond its territorial jurisdiction in levying taxes—a power inherent in the United States because it is a nation and more than a state—it ought to employ language leaving no doubt as to its intention. The presumption should be that a tax law applies only to subjects within the territorial jurisdiction. Although Congress might provide for the grant of documents to foreign-built yachts owned by citizens which would have great protective value, the steps which it has taken in that direction have been slight and the passports which it has provided for are granted only to vessels departing from the United States. The statute uses broad language, but I find nothing in it or in prior legislation clearly evidencing an intention on the part of Congress to tax the use of foreign-built yachts in foreign waters and wholly outside the limits of the United States. The provisions are, in my opinion, consistent with an intention to tax only the use of such yachts in the waters of this country. Possibly the extent of such use may be immaterial, but I think that such use, to some extent, must be shown to bring a case within the statute.⁶

⁶ It must be clearly understood that this conclusion is reached with reference to the allegations in the Bennett and Goelet answers that the yachts belonging to these defendants have not been and are not within the jurisdiction of the United States and that each has acquired a permanent situs abroad. I construe these allegations to wholly negative use in the United States and I have no intention to hold that a yacht belonging to a resident citizen may acquire any such situs in a foreign country as will permit her owner to use her to any considerable extent in the waters of the United

Furthermore, whatever doubt there might be as to the application of the statute in the case of a citizen of the United States residing in this country and owning a foreign-built yacht used only in foreign waters, there can be no question, in my opinion, that a citizen domiciled in a foreign country and owning such a yacht is not liable to the tax. Certainly the liability of a citizen domiciled and resident in France for the use of a foreign-built yacht in foreign waters should be established by clear and certain language, and in this case it is not only doubtful whether the statute applies to such use, but its language is inconsistent with its application to nonresidents. The section in question provides that the tax shall be levied and collected "by the collector of customs nearest the residence of the managing owner." Who is the collector of customs nearest the residence of the defendant Goelet? Is it the collector of the most eastern district in Maine because that district is nearest to Paris? It seems evident from this provision alone that Congress considered that it was dealing with, and intended only to deal with, yacht owners residing in this country.

[5] The next question is whether the tax was properly leviable on September 1, 1909.

The act went into effect on August 6, 1909. The section provides, as we have seen, that a tonnage tax "shall be levied and collected annually on the first day of September * * * upon the use of every foreign-built yacht * * * now or hereafter owned or chartered for more than six months."

In my opinion the six months' limitation applies only to yachts chartered. Such is the natural interpretation of the language used. It might fairly be expected that a charter should run for some extended period to subject a charterer to a tax, but no particular reason appears why continued ownership for any stated period should be required. Indeed, a requirement of six months' ownership would be a direct invitation to transfer to avoid the tax.

Does, then, the fact that less than a month elapsed between the passage of the act and September 1, 1909, establish that the full tax was improperly levied upon that date?

It is urged by the defendants that as the tax is one upon use, it ought to have some fair relation to the actual enjoyment of the privilege taxed, and that it must have been the intention of Congress, in enacting the legislation just prior to the close of the year, to lay an annual tax upon future use and not to penalize past use, and that if a tax for past use be levied it should be apportioned according to the period of actual use prior to September 1, 1909.

There is much force in these contentions but I think that they are not well founded. The language of the statute, speaking on August

States without paying the tax. Whether she could be so used to any extent whatever is a question not presented by the pleadings and upon which no opinion is expressed.

I construe the allegations in the Billings Case to state a substantial use partly within and partly without the waters of the United States and such use I think comes clearly within the statute.

6, 1909, is that the use of yachts "now or hereafter owned" shall be taxed on September 1st. The section says that the use of yachts owned at the time of its passage or thereafter acquired shall be taxed and, in my opinion, Congress intended that such tax should be levied on the first day of every September following the enactment of the statute. While the tax is collectible annually according to a given situation on September 1st, there is nothing in the statute to indicate that a full year's use is a prerequisite to liability, nor is there any provision for apportionment. I, therefore, hold that the tax was properly leviable on September 1, 1909. If this construction gives the statute a retrospective operation—and I fail to see that it does—it is nevertheless adopted, because it is, in my opinion, required by the unequivocal language used.

The fourth question is as to the necessity of showing actual use of the yachts during the year prior to September 1, 1909.

One of the defendants alleges in his answer that his yacht was out of commission during the year preceding the 1st of September, 1909; was laid up during that year, and was not actually used by any person.

The statute seems to distinguish between use and ownership. It imposes a novel tax—a tax on use. There is nothing by way of precedent to aid in the determination whether Congress intended that the statute should apply only in cases where owners use their yachts for yachting purposes during the year prior to the assessment of the tax, or whether it intended that the tax should cover the privilege of using. Considering the object of the statute and the reason of the matter, I think the latter interpretation the correct one, although I fully appreciate the very narrow distinction between such a tax on the privilege of using and a tax on ownership. Still, I can see no reason why Congress should distinguish between the yacht owner who chooses to put his yacht in commission and employ it as a pleasure craft, and the owner who prefers in a particular year to keep his yacht laid up. The latter has in one sense the use of his yacht, although he does not choose to sail it. I have already held that use by the owner for any particular length of time is not necessary to the application of the statute, and I now feel constrained to further hold that no particular kind of use is required—that a yacht owner who keeps his yacht laid up is nevertheless liable to the tax.

[6] The final question to which it is necessary to give any extended consideration is whether the owner of a foreign-built yacht can acquire any immunity under a treaty which will exempt him from the operation of this statute.

The defendant Rainey contends that as the treaty of 1815 with Great Britain provided that no higher or other duties or charge should be imposed in the United States upon the British vessels than those imposed upon vessels of the United States he—as the owner of a British-built vessel—is not subject to the statute.

The defendant does not claim to be a British subject, and it is by no means clear that he is entitled to invoke the protection of the treaty. But, however that may be, it is well settled that when a

treaty is inconsistent with a subsequent act of Congress, the latter will prevail. Taylor et al. v. Morton, 2 Curtis, 454, Fed. Cas. No. 13,799; and see Whitney v. Robertson, 124 U. S. 190, 8 Sup. Ct. 456, 31 L. Ed. 386; Head Money Cases, 112 U. S. 580, 5 Sup. Ct. 247, 28 L. Ed. 798; Cherokee Tobacco, 11 Wall. 616, 20 L. Ed. 227; Ropes v. Clinch, 8 Blatchf. 304, Fed. Cas. No. 12,041.

Treaties are contracts between nations and by the Constitution are made the law of the land. But the Constitution does not declare that the law so established shall never be altered or repealed by Congress. Good faith toward the other contracting nation might require Congress to refrain from making any change, but if it does act, its enactment becomes the controlling law in this country. The other nation may have ground for complaint, but every person is bound to obey the law. And as a corollary it follows that no person acquires any vested right to the continued operation of a treaty.

It is now only necessary to briefly state the conclusions reached with respect to the less important questions considered upon the various briefs.

[7] (1) I am satisfied that an action in the nature of debt will lie against the yacht owners to enforce the collection of the tax, and that the complaints state good causes of action.[7]

[8] (2) I am also satisfied that the section in question is not void as a bill for raising revenue originating in the Senate and not in the House of Representatives. It appears that the section was proposed by the Senate as an amendment to a bill for raising revenue which originated in the House. That is sufficient. Having become an enrolled and duly authenticated act of Congress, it is not for this court to determine whether the amendment was or was not outside the purposes of the original bill.

For the reasons stated, the demurrers of the government to the answers in the Billings, Pierce and Rainey cases are sustained. The demurrers in the Bennett and Goelet cases are overruled.

---

[7] The defendants in these cases are liable as owners of the yachts. Why they should be described in the complaints as "managing owners" is not apparent. The only reference to managing owners in the statute seems to be for the purpose of fixing the jurisdiction of the collector of customs in cases where there are several part owners. Still, a sole owner is undoubtedly the managing owner of his yacht and there is no contention but that these defendants are the sole owners of their yachts. Consequently I think the presence of the word "managing" should not be held to affect the sufficiency of the complaint.