Henry **GODBOLT, Jr.,** Plaintiff,

Floyd Smith et al., Intervenors,

v.

**HUGHES TOOL COMPANY,** Defendant Third Party Plaintiff,

v.

**UNITED STEELWORKERS OF AMERICA, AFL–CIO, LOCAL 1742,** et al., Third Party Defendants.

**Civ. A. No. 70–H–932.**

United States District Court, S. D. Texas, Houston Division.

Dec. 18, 1972.

Clark Gable Ward, Mark T. McDonald and Gabrielle K. McDonald, McDonald & McDonald, Houston, Tex., for plaintiff and intervenors.

Bass C. Wallace, Andrews, Kurth, Campbell & Jones, Houston, Tex., for defendant, 3rd party plaintiff

Chris Dixie, Dixie, Wolf & Hall, Houston, Tex., for Local 1742.

W. Wiley Doran, Mitchell & Doran, Houston, Tex., for Local 716 and others.

Sam Houston Clinton, Jr., Clinton & Richards, Austin, Tex., for Local 262.

## MEMORANDUM AND ORDER

CARL O. BUE, Jr., District Judge.

Before this Court are several pleadings and communications, including a motion by plaintiff Godbolt seeking to alter, amend, or clarify the class designation and also a motion by defendant Hughes Tool Co. (hereinafter referred to as Hughes) seeking to redefine the class. Because of the inability of the parties to arrive voluntarily at a satisfactory resolution of the scope of the class, this Court reluctantly takes the initiative to define for present purposes its dimensions.

■■ It should first be noted that this is a Title VII class action brought under Fed.R.Civ.P. 23(b)(2). Thus, there would appear to be no issue regarding the administrative difficulty or expense of notice as required by Fed.R. Civ.P. 23(c)(2) for Rule 23(b)(3) classes. This Court believes that perhaps too much emphasis has been heretofore given to the literal wording of the definition of the class at this stage of the proceedings. The Federal Rules are to be liberally construed in the context of the circumstances of the case to secure the just, speedy, and inexpensive determination of every action. Foman v. Davis, 371 U.S. 178, 181–182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). This appears to be well suited to Title VII situations. *See, generally*, Annot., Propriety, Under Rules 23(a) and 23(b) of Federal Rules of Civil Procedure, as Amended in 1966, of Class Action Seeking Relief from Racial Discrimination, 8 ALR Fed. 461 (1971). This is not a case in which the defendant is attempting to restrict the class, while the plaintiff seeks to expand it. Almost to the contrary, the plaintiffs are having some difficulty resolving the class dimensions while the defendant seeks to formulate the breadth of the class dimension as fully as is necessary to resolve all issues of racial discrimination at its place of business. The present decision by this Court as to the definition of the class is arrived at solely to expedite proceedings beyond the current preliminary stages and is subject to redefinition, if warranted, at some subsequent point of time, either prior to, during, or after the evidence is presented. The law provides that redefinition may be undertaken or subclasses designated on the Court's initiative or upon the motion of a party. Oatis v. Crown Zellerbach Corp., 398 F.2d 496 (5th Cir. 1968).

■ The original complaint, filed August 28, 1970, was a Title VII class action generally alleging the following: (1) discrimination with respect to compensation, terms, conditions and privileges of employment against Negro persons because of race, or color, (2) limitation and classification of employees in ways which deprive the class of equal employment opportunities and otherwise adversely affect their status as employees because of race and color, (3) limitation of employment and pro-

motional opportunities of Negro employees by means of a discriminatory policy, practice, custom or usage based on race or color, and (4) discriminatory discharge of all or substantially all of its Negro trainees during and immediately prior to the expiration of their probationary period. The plaintiff class was originally defined as composed of Negro persons who are, or might be, employed by defendant Hughes Tool Company at its Houston, Texas plant, who have been and continue to be or might be adversely affected by the practices complained of in the complaint. The complaint prayed for (1) injunctive relief as to discriminatory discharges, transfers, and refusals to reinstate those improperly discharged, (2) back pay with interest, vacation time and bonuses, and (3) attorneys fees. It might be noted that the non-injunctive relief requested does not alter the basic Fed.R.Civ.P. 23(b)(2) nature of the class. Jenkins v. United Gas Corp., 400 F.2d 28 (5th Cir. 1968).

Following the filing of the complaint there have been numerous actions taken by one or more parties affecting the potential class designation. Defendant Hughes moved to enlarge the class to include also Spanish-surnamed Americans, females, and all others covered by the Civil Rights Act of 1964. This was denied by this Court pursuant to the requirements of Fed.R.Civ.P. 23(a)(3) and (4) and on the theory that the class dimension should generally be determined by those who seek to manage and represent that class. Petitioners Smith, Jackson, Manning, and Lott, all Negroes, then sought by common counsel to intervene as parties plaintiff (these parties are hereinafter referred to as intervenors). This motion was granted, and intervenors were advised that they might proceed within the periphery of the issues asserted by the plaintiff. Boudreaux v. Baton Rouge Marine Contracting Co., 304 F.Supp. 240 (E.D.La. 1969).

Subsequently, following pre-trial discussions and correspondence submitted by both parties regarding the appropriate class designation, it was made known to this Court that plaintiff Godbolt, the original named plaintiff, was personally concerned with the discharge of Negroes prior to the expiration of their probationary period allegedly because of their race or color. The intervenors were generally concerned with all other aspects of allegedly discriminatory employment practices against Negroes by the defendant based upon race or color. These included discriminatory practices in connection with (1) job classifications, (2) examination and promotion practices, (3) Negroes training white persons for labor grade positions reserved for whites, (4) enrollment in Apprentice Programs, and (5) the seniority system. Counsel for the parties plaintiff were jointly concerned with "representation" problems of the various named parties plaintiff. Counsel for intervenors also advised the Court that two other persons were desirous of intervening in the proceeding on the same general grounds of employment discrimination. One was a Mexican-American who claims he was discriminated against by the defendant because of his national origin. The other was a Negro woman who claims discrimination based upon race and sex. Subsequently, counsel for plaintiff Godbolt brought a motion to alter, amend or clarify the designation of the class to include only those who were discriminatorily discharged. The motion noted that the intervenors intend to file a motion for a voluntary dismissal and thereafter institute a separate lawsuit. Defendant Hughes, obviously seeking to litigate all related issues in one trial, opposes this motion and has offered a counter motion seeking designation of subclasses which would include intervenors.

This Court does not seek to thrust upon any or all of the parties plaintiff a greater class burden than they may suit-

ably handle. Likewise, this Court does not wish to see defendant Hughes, whose labor relations decisions are complicated by the involvement of numerous unions (many or most of which have been impleaded as third party defendants), placed in an untenable situation as a consequence of exposure to several potential trials of artificially narrow classes involving the same general issue. The class, as originally defined, would include allegations of discrimination applicable to the current contentions of plaintiff Godbolt as well as those of the intervenors.

The Fifth Circuit Court of Appeals has indicated that a plaintiff bringing a Title VII action whose scope is an "across the board" attack on unequal employment practices may properly represent a class *affected by any or all of the allegedly discriminatory practices,* even though the named plaintiff was only subject to one or another of the alleged practices. Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122, 1124 (5th Cir. 1969). Thus, it is clear that any one of the presently named plaintiffs could, in fact, have standing to represent all Negroes alleging discrimination by defendant Hughes on any ground related to race or color. As the Circuit pointed out, the racially discriminatory policy would hang over the head of all members of the racial class and would be a question of fact common to all members of the class. Those facts of discrimination unique to any of the named plaintiffs, if proved, would be but one more link in a showing of a general policy of discrimination by the defendant based upon race or color. At this point no definition of subclasses appears to be necessary. For the above reasons, the motions of the plaintiff Godbolt and defendant Hughes are denied.

Most significant to the resolution of any class problem is that of representation. It is the law that the representative parties must fairly and adequately protect the class interest. Fed.R.Civ.P. 23(a)(4). Adequacy of representation frequently turns on the quality of representation. In this regard, a party's counsel should be qualified, experienced, and generally able to conduct the proposed litigation. Johnson v. Georgia Highway Express, Inc., *supra* at 1125; Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2d Cir. 1968); Contract Buyers League v. F. & F. Investment, 48 F.R.D. 7 (N.D.Ill.1969). *See also* Moss v. The Lane Co., 50 F.R.D. 122 (W.D.Va.1970). At this point in the proceedings, this Court has no reason to be concerned about the quality of the legal representation in this case. The Court has been advised that there is no conflict of interest as between plaintiff Godbolt and the intervenors. Thus, this Court finds no reason why the class, as originally defined, should be modified at this point in the proceedings. This Court will pay close attention to the proof presented at the trial and, regardless of which party ultimately prevails, should it be found that the class as presently defined was not "fairly and adequately" protected, then the class will be redesignated as necessary to arrive at a class which was so protected.

 The issue of framing a class definition sufficiently broad to include the "potential" intervenors noted is somewhat novel. At this point there has been no indication as to the nature of the alleged discrimination against the potential female Negro intervenor. This Court has briefly reviewed decisions on alleged sex discrimination, and it appears that the facts and manner of proof could raise significantly different issues from those presently raised. It could develop that there would be no common questions of law and fact applicable to the entire class if claims of sex discrimination were included. Thus, such claims will be excluded. Those discriminatory practices based on race or color, however, presumably possess some common ground with those alleged by

**374**

the plaintiff, so in that sense she is already a member of the present class. As to the potential Mexican-American intervenor, there appears to be little existing law. In at least one other action based upon allegedly discriminatory employer practices, class status was provisionally given to a class composed of Negroes, Spanish-surnamed individuals, Orientals, and American Indians. Harvey v. International Harvester, 56 F.R.D. 47, 41 U.S.L.W. 2119 (N.D.Calif.1972). Despite the designation of alleged discrimination against Spanish-surnamed persons as being based on "National origin," as a practical matter, discrimination against "national origin" minorities differs little, if at all, from discrimination against "racial" minorities. Should the proof indicate that alleged discrimination against one minority differed substantially from that against another, the class designation may be appropriately modified or subclasses created.

■ Since none of the plaintiffs has indicated a desire to withdraw from the action and cease all legal action against defendant Hughes, and since the Court construes the motion of plaintiff Godbolt to redefine the class as being improvidently sought, this Court makes the following appropriate order under Fed.R. Civ.P. 23(d):

The "class" in the present litigation shall include, subject to the above-stated conditions, past, present, or future employees of defendant Hughes Tool Company at its Houston, Texas, plant who have been, continue to be, or might be adversely affected by reasons of race, color, or national origin, with respect to the following claimed discriminatory employment practices: (1) discrimination with respect to compensation, terms, conditions and privileges of employment, (2) limitation and classification of employees in ways to deprive the class of equal employment opportunities and otherwise adversely affect their status as employees, (3) limitation of employ-

ment and promotional opportunities by means of policy, practice, custom, and usage, and (4) discriminatory discharge of all or substantially all of its minority trainees during and immediately prior to the expiration of their probationary period.

Counsel for plaintiffs and defendant Hughes are directed to confer and thereafter advise this Court prior to trial as to an appropriate cut-off date for determining which "past" employees are members of this class.