Evangelina B. GONZALEZ, and all others similarly situated

v.

TEXAS EMPLOYMENT COMMISSION, and Harold Dudley, Individually and in his official capacity as Chairman of the Texas Employment Commission.

Civ. A. No. 74–B–89.

United States District Court, S. D. Texas, Brownsville Division.

Jan. 24, 1977.

Texas Rural Legal Aid, Inc., George P. Powell and Philip F. Ricketts, Edinburg, Tex., for plaintiff.

John L. Hill, Atty. Gen. of Tex., Alberto Garcia, Rick Harrison, Asst. Attys. Gen., and Michael E. Stork, Asst. Atty. Gen., and Asst. Chief, Taxation Div., Austin, Tex., Stephen W. Hollahan, Gen. Counsel, Texas Employment Commission, Austin, Tex., for defendants.

## MEMORANDUM AND ORDER

GARZA, District Judge.

Evangelina B. Gonzalez, the Plaintiff, filed suit against the Texas Employment Commission (TEC) and Harold Dudley, Chairman of the TEC, to challenge a TEC policy regarding unemployment compensation benefits and pregnancy. At the time of the initiation of this action, the TEC enforced a standard rule which can be generalized as follows: All benefits were denied to pregnant women during the last trimester of pregnancy and for six weeks after delivery. Plaintiff alleged that this policy deprived her of rights protected by the due process clause of the Fourteenth Amendment to the United States Constitution and by 42 U.S.C. § 1983. Jurisdiction over this action is authorized by 28 U.S.C. § 1343(3). Two motions are presently pending: Defendants' Motion to Dismiss and Plaintiff's Motion for Summary Judgment.

A preliminary issue which must be confronted is that of mootness. Subsequent to the commencement of this action, the TEC altered its regulations in a manner satisfactory to Plaintiff. Plaintiff originally requested money damages, as well as injunctive and declaratory relief. When the TEC changed its regulations, Plaintiff abandoned her claim for injunctive relief, but damages and a declaratory judgment are still sought.

The two forms of relief still demanded by Plaintiff are not moot. In the recent case of *Familias Unidas v. Briscoe*, 544 F.2d 182 (C.A.5, 1976) a similar question arose. The Court ruled that once the Defendants had altered their conduct and rendered assurances that it would not be repeated, Plaintiff's claim for injunctive relief became moot. However, the Fifth Circuit ruled that the Trial Court's dismissal of the claims for damages and a declaratory judgment was erroneous. The ruling relating to the declaratory judgment was based in part on the possibility that the Defendant could later repeat the conduct complained of and yet evade review; this possibility is less compelling in the instant case than in *Fami-*

*lias Unidas.* Yet the Court there also reasoned that if the declaratory judgment action were held moot,

".  .  . without consideration of possible injury, it would indeed be an anomaly if damages were subsequently awarded under 42 U.S.C. § 1983. While the claim under § 1983 is separate and distinct, the instance of the statute's application is the basis for the relief sought in both actions." *Familias Unidas v. Briscoe, supra,* at 190.

This reasoning supports a continued consideration of the declaratory judgment action in the present controversy; and, in view of other rulings made herein, the request for declaratory relief is not moot.

■ The second matter of which disposition must be made is Defendants' Motion to Dismiss. This motion contains three distinct claims, and each will be addressed separately. First, Defendants contend that the Texas Employment Commission is not a "person" within the meaning of 42 U.S.C. § 1983, and thus should be dismissed from this cause. Defendants' interpretation of 42 U.S.C. § 1983 is correct; the TEC is not amenable to a claim for damages under that civil rights statute. However, the TEC *is* subject to the dictates of a declaratory judgment, and, therefore, it will not be dismissed. The second claim is that venue in the Southern District of Texas is improper. This claim is without merit: This cause of action arose when Plaintiff's claim for benefits was denied in Hidalgo County, which is within the Southern District of Texas. 28 U.S.C. § 1391(b). Finally, Defendants argue that the two other commissioners who head the TEC, in addition to Defendant Dudley, should be joined in this cause because any change in TEC policy requires a vote of at least two of the three commissioners. However, this Court has confidence that any ordered change would be implemented by the commissioners. More particularly, since the change sought by Plaintiff has already been made, the potential dilemma raised by Defendants is now moot.

Defendants' Motion to Dismiss is denied.

The third issue—raised most recently in Plaintiff's Motion for Summary Judgment—concerns Plaintiff's request to have this action declared a class action. As alleged in Plaintiff's First Amended Complaint, she seeks to represent "all present and future unemployed pregnant women, who automatically will be disqualified from receiving unemployment compensation benefits  .  .  .." For the reasons explained below, class action treatment would be inappropriate.

■ The very existence of the proposed class and the impracticability of joinder have not been shown. In Plaintiff's First Set of Interrogatories, filed on August 18, 1976, Defendants were asked to state the "number of pregnant women denied unemployment benefits for the reason of their pregnancy from June, 1972 until the present." Defendant TEC answered that during the specified time period the total value of *all* claims filed was over $1,300,000. Further, Defendant stated that the only way to determine the answer would be to conduct a manual search of all of these claims files and thereby ascertain which related to pregnancy benefits; pursuant to Rule 33(c), Fed.R.Civ.P., Plaintiff was afforded an opportunity to conduct such a search. In Plaintiff's Second Set of Interrogatories, Defendants were asked if the TEC computer could identify those women who were disqualified due to pregnancy. The Defendants answered, "No."

In the case of *Tolbert v. Western Electric Company,* 56 F.R.D. 108 (N.D.Ga.,1972), the District Court for the Northern District of Georgia denied class action status in two Title VII cases on grounds identical to those stated in the above paragraph. The reasoning of the Court is applicable here:

"The burden of satisfying the requirements of Rule 23 falls on those who seek to maintain a class action and it is their obligation to make a positive showing that, among other things, the members of the proposed class are so numerous that their joinder is impracticable.  .  .  . While the failure to enumerate and identify class members with precision is not

fatal, . . . mere speculation as to the existence of the class is insufficient to comply with Rule 23(a)(1)." *Tolbert v. Western Electric Company, supra,* at 113. Plaintiff in this case has failed to satisfy the most fundamental requirements of Rule 23.

In Plaintiff's brief, filed at the outset of this litigation the problems of identification were seemingly recognized:

"There is no way to actually determine the exact amount of women who fit into the class . . .. Also, *there is no way to determine who the exact members of the class are* and it is not necessary to know the names of each member and potential member of the class; nor is it necessary that they be served with notice of the suit." (Emphasis added.) Plaintiff's brief, page 11.

In the situation described, there is little to be gained by maintaining a class action beyond that which is achieved by a mere declaratory judgment as to the propriety of the former TEC policy. The latter issue is reached below.

Related to the deficiencies just discussed is another factor which militates against class action status. This cause was initiated on June 10, 1974. On March 9, 1976, Plaintiff indicated to the Court that, since the TEC policy had been changed, she would seek only individual relief. (Motion to Amend, paragraph 4.) However, on December 7, 1976, the request for class action treatment and relief was reinstated. (Plaintiff's Motion for Summary Judgment.) Yet, during the more than two and a half years of the pendency of this litigation, not a *single* claim identical to Plaintiff's has been brought to this Court's attention. One of the primary purposes of the class action is the avoidance of a multiplicity of actions, 7 Wright & Miller, Federal Practice and Procedure: Civil § 1751 (1972), but that purpose would not be furthered here.

Although assumptions do not satisfy the proof requirements of Rule 23, for the purposes of analysis it will be assumed that in fact a large number of women other than Plaintiff were subjected to the TEC policy of terminating unemployment benefits for an arbitrary time period. Having made that assumption, however, it is apparent that a problem of manageability arises. This problem relates not only to the potentially large number of claimants, but also to the need for individual analysis of each claim; for it would be necessary to determine the time period that each claimant was actually incapacitated due to the pregnancy, and thus unavailable for work. In short, aside from the fact that the former policy was applied, common questions of fact do not predominate. Moreover, it would be difficult to litigate all claims from throughout the State of Texas in this Court. And, particularly in view of the policy change, there is little danger of inconsistent or varying adjudications by either another court or by the administrative agency itself. Indeed, at this juncture, the administrative agency is a far more efficient forum for disposition of similar claims.

Plaintiff's request for class action status and relief is denied.

**[6]** Plaintiff's Motion for Summary Judgment presents a fourth question: Whether a declaratory judgment should issue, pursuant to 28 U.S.C. § 2201, declaring that the former TEC policy violates the due process clause of the Fourteenth Amendment to the United States Constitution. This Court is of the opinion that Plaintiff is entitled to such a declaratory judgment.

The policy which Plaintiff challenges is stated in various TEC publications; one source of this policy is the Nonmonetary Determination Statements Manual, §§ 4D75 through 4D77 and 4D81 through 4D85. Pursuant to the TEC regulations, Plaintiff's claim for benefits was denied. She was notified by a "Notice of Claim Determination", which stated the following:

"A claimant who is in the last three months of pregnancy is not eligible to receive benefits under Section 4(D) of the Act because she is considered not available for work as she does not have the reasonable expectancy of obtaining work. You are expected to be in the last three months of your period of pregnancy on June 5, 1974.

"Therefore, if you are in claimant status on that date, and you are still pregnant, payments to you will be suspended and you will be held ineligible to receive benefits.

"This ineligibility will remain in effect until six weeks after childbirth and shall not be removed then unless and until you produce evidence that you are physically able to return to work, that you have someone to care for the child, and that the baby is not breast fed." (Plaintiff's Exhibit 1, October 4, 1974 hearing.)

A prior case which originated in this District concerned the same TEC policy which is now at issue. In *Vick v. Texas Employment Commission*, 514 F.2d 734 (C.A.5, 1975), the Plaintiff attempted to challenge the TEC's eighteen-week pregnancy rule. However, the Fifth Circuit ruled that Title VII did not, by its terms, provide a remedy for the claim asserted, and that Plaintiff's Complaint was otherwise defective under the requirements of 42 U.S.C. § 1983; accordingly, the District Court was found to be without jurisdiction over the claim for unemployment compensation. The infirmities found in *Vick* are not present here. Plaintiff did not rely upon Title VII, and, as has earlier been ruled herein, Defendant Dudley, but not the TEC, is present in this suit under 42 U.S.C. § 1983; finally, she properly relied upon 28 U.S.C. § 2201 as a basis for substantive relief.

Shortly after the decision in *Vick v. Texas Employment Commission, supra*, the Supreme Court rendered a ruling in the case of *Turner v. Department of Employment Security of Utah*, 423 U.S. 44, 96 S.Ct. 249, 46 L.Ed.2d 181 (1975). A statutory scheme virtually identical to that in this case was under consideration:

"The Utah unemployment compensation system grants benefits to persons who are unemployed and are available for employment. . . . [T]he challenged provision establishes a blanket disqualification during an 18-week period immediately preceding and following childbirth." *Turner v. Department of Employment Security of Utah, supra*, at 45, 96 S.Ct. at 250.

The Supreme Court, in a *per curiam* opinion, went on to declare the Utah statutory scheme unconstitutional under the Fourteenth Amendment:

"The presumption of incapacity and unavailability for employment created by the challenged provision is virtually identical to the presumption found unconstitutional in *Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52. In *LaFleur*, the court held that a school board's mandatory maternity leave rule which required a teacher to quit her job several months before the expected birth of her child and prohibited her return to work until three months after childbirth violated the Fourteenth Amendment. . . .

\* \* \* \* \* \*

"It cannot be doubted that a substantial number of women are fully capable of working well into their last trimester of pregnancy and of resuming employment shortly after childbirth. . . . The Fourteenth Amendment requires that unemployment compensation boards no less than school boards must achieve legitimate state ends through more individualized means when basic human liberties are at stake. We conclude that the Utah unemployment compensation statute's incorporation of a conclusive presumption of incapacity during so long a period before and after childbirth is constitutionally invalid under the principles of the *LaFleur* case." *Turner v. Department of Employment Security of Utah, supra*, at 46, 96 S.Ct. at 250, 251.

The former TEC regulations are equally infirm. They operated in a manner which violates the due process clause of the Fourteenth Amendment to the United States Constitution.

The final matter for disposition is Plaintiff's damages. In Plaintiff's Motion for Summary Judgment, she asked for the benefits which were wrongfully denied. However, as explained below, damages cannot be finalized at this time.

The primary deficiency in the record—as, it relates to the Summary Judgment Mo-

tion—concerns the certainty of the amount of damages. At a hearing on October 4, 1974, Plaintiff testified about the time that she was able to work, both during her last trimester and after the birth of her child; this testimony was undisputed. However, a transcript of the hearing apparently was never made. On November 6, 1974, Plaintiff submitted a brief in which the time periods of her availability for work are outlined. Yet, it is not clear that these time periods correspond to the evidence (that is, Plaintiff's testimony). Moreover, there is no correlation between the time periods and the monetary value of the benefits which should have been received.

Accordingly, within thirty days from the entry of this Memorandum and Order, Plaintiff is hereby ordered to submit evidence (affidavits or other appropriate proof) of the amount owed her. If the parties are able to agree on the amount, a stipulation to that effect may be submitted. If, however, Defendant Dudley disputes the sum submitted by Plaintiff, he shall inform the Court of his disagreement and of the grounds therefor within fifteen days after the submission of Plaintiff's evidence. A ruling upon that portion of the Motion for Summary Judgment which relates to damages will be held in abeyance pending compliance with this Order.