Ruby Rose LEDET, et al.

v.

George FISCHER.

Civ. A. No. 82–16.

United States District Court,
M. D. Louisiana.

Aug. 18, 1982.

Henry C. Remm, Jr., Acadiana Legal Service Corp., Lafayette, La., for plaintiffs.

Sidney W. Hall, Dept. of Health & Human Resources, Baton Rouge, La., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOHN V. PARKER, Chief Judge.

This matter is before the court on a motion for class certification and a motion for preliminary injunction. Plaintiff is a Medicaid eligible[1] disabled widow and recipient of Supplemental Security Income [SSI], who is in need of eyeglasses. Plaintiff owns only a broken, unusable, unrepairable pair of eyeglasses and is unable to afford new eyeglasses and related services which she desires to obtain from an optometrist. The evidence introduced at the evidentiary hearing on plaintiff's motion for preliminary injunction demonstrates that plaintiff has uncorrected visual acuity of 20/70 in each eye, with corrected visual acuity of 20/40 in each eye. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and alleges jurisdiction under 28 U.S.C. §§ 1343(3), 1343(4), and 1331,[2] alleging, inter alia, that the regulations of the Louisiana Public Assistance Manual, sections 19–490 through 19–492, which limit the provision of eyeglasses to certain categories of recipients which do not include plaintiff, violate plaintiff's constitutional

---

1. Under the provisions of 42 C.F.R. § 435.120, plaintiff qualifies as a "categorically needy" person. Section 435.120 provides, "... [T]he agency must provide Medicaid to aged, blind and disabled individuals or couples who receive SSI...."

2. Sections 1343(3) and 1343(4) of Title 28, United States Code, are sufficient to base the jurisdiction of this court over plaintiff's constitutional claims, which this court finds to be substantial, since there is no binding Supreme Court precedent which forecloses the constitu-

tional claims presented. *Hagans v. Levine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), quoting *Goosby v. Osser,* 409 U.S. 512, 518, 93 S.Ct. 854, 858–59, 35 L.Ed.2d 36 (1973) (in order to be "insubstantial" for purposes of pendent jurisdiction, "prior decisions [must] inescapably render the claims frivolous.") See also *Curtis v. Taylor,* 625 F.2d 645 (5th Cir. 1980). Plaintiff's federal statutory and state-law claims are cognizable by this court under the theory of pendent jurisdiction. *Hagans v. Levine, supra.*

rights and are inconsistent with certain federal regulations [3] governing the provision of eyeglasses under Medicaid programs. Under the provisions of the Louisiana Public Assistance Manual, Section 14–492, adult eyeglasses are made available only to post-cataract surgery patients, of which plaintiff is not one.

The relief sought in plaintiff's complaint consists of preliminary and permanent prohibitory injunctive relief, declaratory relief, class certification, a court order requiring the defendant to send each member of the proposed class a notice informing the recipient of the procedures which may become available by which they may receive payments for eyeglasses and attendant optometric services, attorney fees, costs, disbursements, and "all other general and equitable relief which may be proper." ·

As a preliminary matter, defendant argues that plaintiff lacks standing to pursue her claims, on the grounds that, since it is primarily declaratory and prohibitory injunctive relief which is sought, a judgment in plaintiff's favor will not necessarily secure her the right to a new pair of eyeglasses, since the State would retain the option of cancelling the cataract glasses and contact lens program, rather than expanding it in accordance with any prohibitory injunction or declaratory judgment issued by the court. Therefore, defendant argues, there is no 'case or controversy' of which the court can take jurisdiction under Article III of the United States Constitution.

■ The well-established rule regarding standing requirements in cases involving the challenge of the constitutionality of a legislative enactment is that, under Article III, the challenger must establish that, in fact, the asserted injury was the consequence of the unconstitutional statute (or regulation), or, in other words, that there is a substantial likelihood that, in the event the challenger is successful on the merits, the relief sought will redress the injury which was claimed. *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 98 S.Ct. 2620, 59 L.Ed.2d 595 (1978), quoting *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976); *Village of Arlington Heights v. Metropolitan Housing Development Corporation,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977).

■ Plaintiff is a member of the group of persons who are ineligible for eyeglasses on the basis of their classification as non-cataract surgery patients. Since plaintiff herself is in need of eyeglasses, and since plaintiff herself suffers the consequences of being classified unfavorably under the state regulations, the interest of the plaintiff is a direct interest. The allegedly wrongful discrimination against plaintiff constitutes an immediate injury which would be remediated as a result of a judgment in this action favorable to her, which would prohibit the continuation of the disputed classification scheme. *Machado v. Dept. of Health & Rehabilitative Services of the State of Florida,* 357 F.Supp. 890 (D.C.Fla.1973).

The question of whether or not the plaintiff would actually receive a pair of eyeglasses as a result of a favorable judgment is immaterial to the standing issue, since it is merely a question of relief. *Regents of University of California v. Bakke,* 438 U.S. 265, 281 n.14, 98 S.Ct. 2733, 2743 n.14, 57 L.Ed.2d 750 (1978) (standing issue not to be determined by failure of Bakke to prove that he would have been admitted in the absence of the special (discriminatory) program).

---

**3.** See, e.g., 42 C.F.R. § 440.230:

"Sufficiency of amount, duration and scope. (a) The plan must specify the amount and duration of each service that it provides. (b) Each service must be sufficient in amount, duration and scope to reasonably achieve its purpose. (c)(1) The Medicaid agency may not arbitrarily deny or reduce the amount, duration, or scope of a required service ... to an otherwise eligible recipient solely because of the diagnosis, type of illness, or condition. (2) The agency may place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures."

■ Defendant also raises the procedural objection that plaintiff has failed to exhaust administrative remedies before filing the complaint. This argument is without merit, since actions found upon 42 U.S.C. § 1983 are free of any requirement of exhaustion of state judicial or administrative remedies. *Gibson v. Berryhill,* 411 U.S. 564, 574, 93 S.Ct. 1689, 1696, 36 L.Ed.2d 488 (1973); *Sparks v. Griffin,* 460 F.2d 433, 442 (5th Cir. 1972); *Wells Fargo Armored Service Corp. v. Georgia Public Service Comm.,* 547 F.2d 938 (5th Cir. 1977). Moreover, plaintiff has made an administrative claim for the relief which she seeks, which was denied. Assuming that a requirement for exhaustion of state administrative remedies exists, the exhaustion doctrine has been held inapplicable in cases where application for relief to the appropriate administrative tribunal would be totally fruitless, as when the agency involved has a declared policy in support of the conduct being challenged, which is the case here. *Potts v. Flax,* 313 F.2d 284 (5th Cir. 1963).

## I. CLASS CERTIFICATION

Plaintiff requested, in paragraph IV of her complaint, class certification of a class consisting of "all present and future Medicaid recipients in Louisiana, who are not eligible for the Early Periodic Screening, Diagnosis and Treatment (EPSDT) program, who are or will be in need of eyeglasses and/or physician's services related to their eyes, but who have been denied or will be denied assistance because of the restrictive rules and practices which authorize vendor reimbursement only for eyeglasses customarily used following cataract surgery and which do not authorize vendor reimbursement for services provided by an optometrist except for refractions following cataract surgery." Plaintiff also filed a "Motion for Maintenance of Class Actions" seeking the same relief.

This court has determined, upon its own initiative, that it is necessary for the court to exercise its inherent power to redefine the class in order to bring it within the parameters of Fed.R.Civ.P. 23, so that certification would be proper. *Sembach v. McMahon College, Inc.,* 86 F.R.D. 188 (S.D. Tex.1980); *Godbolt v. Hughes Tool Company,* 63 F.R.D. 370 (S.D.Tex.1972). The definition of the proposed class is hereby redefined to consist of "all present and future categorically needy Medicaid recipients in Louisiana, who are not eligible for the Early Periodic Screening, Diagnosis and Treatment (EPSADT) program, or for the Louisiana program providing for 'one pair of permanent cataract glasses or contact lenses following cataract surgery only'[4] who are or will be in need of eyeglasses and related services, and who desire to obtain optometric services therefor, but who have been denied or will be denied assistance because of the restrictive rules and practices which authorize vendor reimbursement only for cataract glasses or contact lenses customarily used following cataract surgery."

For reasons pertaining to the typicality requirement of class representatives under Fed.R.Civ.P. 23(a)(3), discussed below, and because plaintiff, the designated class representative, personally desires to utilize the services of an optometrist, as opposed to a physician, in procuring eyeglasses, the revised class definition has been limited to that class of categorically needy persons, such as plaintiff Ledet, who desire optometric rather than medical services in connection with the eyeglass program.

The four predicate criteria enumerated under subsection (a) of Rule 23, Fed.R. Civ.P., are (1) numerosity, (2) commonality, (3) typicality, and (4) representativeness. In addition, the class action must meet at least one of the conditions described in Rule 23(b). All of these essential criteria are satisfied in the instant case.

■ Numerosity refers to the degree of impracticality of joinder of all the individual members of the proposed class. The party seeking class maintenance need only show that it is difficult or inconvenient to join all members of the class. *Republic National Bank of Dallas v. Denton & An-*

4. La. Public Assistance Manual Regulations, Part XIV, Eye Care, Section 19–493A.

derson Co., 68 F.R.D. 208 (D.C.Tex.1975). Although the burden is on the party seeking class certification, *Gonzalez v. Texas Employment Commission,* 486 F.Supp. 278 (D.C.Tex.1977), the exact number of potential members of the class need not be shown, especially where the relief sought is injunctive and declaratory in nature. *Doe v. Flowers,* 364 F.Supp. 953 (D.C.W.Va. 1973), aff'd without opinion, 416 U.S. 922, 94 S.Ct. 1921, 40 L.Ed.2d 279 (1974).

■ It was stipulated at trial that approximately 379,929 persons were qualified recipients of Medicaid in Louisiana as of November, 1980. According to Dr. Paul L. Marks, an ophthalmologist whose deposition was filed in lieu of his appearance and testimony at trial, approximately fifteen percent of the general population under forty years of age, and between ninety and ninety-five percent of the general population over forty years of age, is in need of eyeglasses.

These facts demonstrate that the numerosity requirement of Fed.R.Civ.P. 23(a)(1) is adequately satisfied in the instant case.

■ Rule 23(a)(2) requires that "questions of law or fact common to the class" be present in order to maintain a class action. In cases of alleged discrimination, as in the instant case, it is sufficient if the various class members were all victims of the same alleged discriminatory policy. *Norwalk CORE v. Norwalk Redevelopment Agency,* 395 F.2d 920 (2d Cir. 1968); *Hicks v. Crown Zellerbach Corp.,* 49 F.R.D. 184 (D.C.La. 1968); *Southern v. Board of Trustees for the Dallas Independent School District,* 318 F.Supp. 355 (D.C.Tex.1970), aff'd *per curiam,* 461 F.2d 1267 (5th Cir. 1972). This second requirement of Rule 23(a) is clearly met, since all members of the class have allegedly been denied eyeglasses solely on the basis of their classification as non-cataract surgery patients.

■ Rule 23(a)(3) provides that a class action may be maintained only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." In order for a class representative's claims to be typical of those of the rest of the class, the two sets of claims need not be completely co-extensive or identical. *Vuyanich v. Republic National Bank of Dallas,* 505 F.Supp. 224 (D.C.Tex.1980). In the instant case, the status and complaint of plaintiff Ledet is substantially identical to the interests of the other members of the class, who claim the right to be fitted with eyeglasses through the services of an optometrist. Therefore, the requirement of commonality is met.

The final pre-requisite to class maintenance under Fed.R.Civ.P. 23(a) is the requirement that a class action be maintained only if "the representative parties will fairly and adequately protect the interests of the class." Defendant admits, in its opposition to motion for class certification, and this court finds, that plaintiff and her counsel adequately represent the class.[5]

■ Furthermore, the court notes that neither the class action, nor the claims made by the representative plaintiff, will be rendered moot, even assuming that the representative plaintiff procures a pair of eyeglasses independently, for such an occurrence would not render the grievances of the entire class moot, on the grounds that this action falls within the "capable of repetition, yet evading review" exception to the mootness doctrine. See *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). Nor would plaintiff's claim of wrongful discrimination be rendered moot, since the injury attributable to the alleged wrongful discrimination or classification shall have been suffered by plaintiff regardless of whether she ultimately procures a pair of eyeglasses or not. See *Jenkins v. United Gas Corp.,* 400 F.2d 28 (5th Cir. 1968) (offer and acceptance of a promotion subsequent to the filing of a class action by a negro employee alleging systematic racial discrimination did not render suit moot either as to

---

**5.** Defendant, in its opposition, asserts that "[w]e have no doubt that Acadiana Legal Service Corporation has the ability to represent a

proper *Class Action; ...*" (emphasis in the original).

the employee or as to the class he represented).

In addition to satisfying the requirements of Rule 23(a), the proposed class also meets the mandatory prerequisites of Rule 23(b)(2), in that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Rule 23(b)(2). Cases having similar fact situations to this one have been certified as Rule 23(b)(2) class actions. See, e.g., *Davis v. Weir*, 497 F.2d 139 (5th Cir. 1974) (civil rights class action permitted against city water department to secure declaration that utility termination procedures used by the city were unconstitutional); *Triplett v. Cobb*, 331 F.Supp. 652 (D.C.Miss.1971) (action to enjoin state Medicaid commission from excluding welfare mothers and other caretaker relatives from program, held, proper case for class certification).

The absence of provision for eyeglasses to members of the class rests on the same reason for each individual member, i.e., non-inclusion in the only group (the post-cataract surgery group) for which eyeglasses are provided to adults by the Louisiana Medicaid program. Therefore, since the defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole, Rule 23(b) poses no barrier to class certification in the instant case.

Finally, this court notes that pre-trial notice need not be given in Rule 23(b)(2) class actions. The Supreme Court in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 at n.14, 94 S.Ct. 2140, 2152 at n.14, 40 L.Ed.2d 732 (1974), noted that the provi- sions of Rule 23(c)(2)[6] do not apply in Rule 23(b)(2) class actions. See also *Sosna v. Iowa*, 419 U.S. 393, 397 at n. 4, 95 S.Ct. 553, 556 at n.4, 42 L.Ed.2d 532 (1975). Since the Rule 23(b)(2) action binds all class members named in the judgment pursuant to Rule 23(c)(3), the argument has been proffered that the Due Process Clause requires that pre-trial notice be given to all class members, independently of Rule 23. By implication, the Supreme Court in *Eisen* and *Sosna*, *supra*, found no such requirement, and decisions which previously held that the Due Process Clause required such notice are[7] suspect after *Eisen* and *Sosna*. Should notice to class members be deemed desirable, it can be accomplished prior to trial on the merits.

On the basis of the record and evidence introduced at the hearing on plaintiff's motion for preliminary injunction,[8] from which this court has determined that the factual and legal pre-requisites for the maintenance of a class action under Rule 23 have been satisfied, plaintiff's motion for class certification is hereby GRANTED with the class redefined as indicated herein.

## II. PRELIMINARY INJUNCTION

The decision to grant or deny a preliminary injunction rests within the discretion of the court. *Shuttlesworth v. Connor*, 291 F.2d 217 (5th Cir. 1961).

The four pre-requisites which are necessary in order to justify the grant of a preliminary injunction are a showing: (a) that substantial likelihood exists that the movant will prevail on the merits at trial; (b) that a substantial threat of irreparable harm or injury exists if the preliminary injunction is not granted; (c) that the threat of irreparable harm outweighs the potential for harm or inconvenience to the

---

6. Rule 23(c)(2) provides: "In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances. . . ."

7. See, e.g., *Pasquier v. Tass*, 318 F.Supp. 1350 (E.D.La.1970).

8. There is no need for a preliminary evidentiary hearing to be held in order to determine the maintainability of a class action. *Gosa v. Securities Inv. Co.*, 449 F.2d 1330, 1333 n.2 (5th Cir. 1971).

party against whom the preliminary injunction is sought; and (d) that the grant of a preliminary injunction will not disserve the public interest. *Allison v. Froehlke,* 470 F.2d 1123 (5th Cir. 1972); *Parish v. National Collegiate Athletic Association,* 361 F.Supp. 1220 (D.C.La.1973), *aff'd,* 506 F.2d 1028 (1975) (preliminary injunction should not be granted without a clear demonstration that the movant will succeed on the merits and that irreparable injury is threatened.)

▇ The function of a preliminary injunction is simply to preserve the status quo; it is an extraordinary and drastic remedy which should not be granted unless the movant clearly carries the burden of persuasion on all four (4) pre-requisites of a preliminary injunction. *American Radio Ass'n v. Mobile S.S. Ass'n, Inc.,* 483 F.2d 1 (5th Cir. 1973); *Canal Authority of State of Florida v. Callaway,* 489 F.2d 567 (5th Cir. 1974) and other 5th Circuit cases cited therein.

The major substantive issues, which will be discussed with reference to analysis of the likelihood of plaintiff's success upon the merits at trial, center upon plaintiff's claims (a) that the state Medicaid program regulations are inconsistent with federal statutes and regulations, in violation of the Supremacy Clause, and (b) that the differential treatment afforded the plaintiff class with respect to cataract surgery patients lacks a rational basis and establishes an irrebuttable presumption that persons outside the disputed classification do not require eyeglasses, in violation of the Equal Protection and Due Process clauses, respectively.

▇ Although jurisdiction is based primarily upon the existence of "substantial" equal protection and due process constitutional claims,[9] to which are pended the statutory claims alleging inconsistency between the state regulations and the federal statutes and regulations, nevertheless, such jurisdiction having been established, the pendent claims alleging conflict between the state regulations and the federal statutes and regulations will be addressed and determined first. *Hagans v. Levine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

Louisiana strictly limits provision of eyeglasses to "one pair of permanent cataract glasses following cataract surgery." [10]

---

9. Section 1343(3) of Title 28, United States Code, provides: "The district court shall have original jurisdiction of any civil action authorized by law to be commenced by any person: * * (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by *any Act of Congress providing for equal rights of citizens* or of all persons within the jurisdiction of the United States."

Section 1343(4) confers jurisdiction on district courts ". . . [t]o recover damages or to secure equitable or other relief under *any Act of Congress providing for the protection of civil rights. . . .*" (Emphasis added.)

It is well-established that the Social Security Act is not an Act of Congress which secures either "equal rights" or "civil rights," as those terms are used in Section 1343; consequently, the mere allegation of a conflict between a state Medicaid regulation and a provision of the Social Security Act is insufficient to confer jurisdiction under 28 U.S.C. §§ 1343(3) or (4) and, likewise, an assertion of a constitutional claim must involve more than a contention that the Supremacy Clause requires that a federal statute be given effect over a conflicting State law or regulation. *Chapman v. Houston Wel-*

*fare Rights Organization,* 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979).

10. The Louisiana Public Assistance Manual, Part XIV, Eye Care, Sections 19–490 through 492: read as follows:

"19–490 VENDOR PAYMENT FOR EYE CARE

\* \* \* \* \* \*

B. *What Eye Care Can Be Paid*

Vendor payment shall be made for services rendered by an opthalmologist [sic] or physician specializing in EENT (eye, ear, nose and throat). Vendor payment to an optometrist, except for those individuals eligible through the EPSDT program, shall be made only for refraction following cataract surgery.

19–491 EYEGLASSES

There is no provision for regular eyeglasses other than those provided through the EPSDT program.

19–492 PURCHASE OF CATARACT GLASSES OR CONTACT LENSES FOLLOWING CATARACT SURGERY

A. *Who is Eligible*

For individuals enumerated in Part I, Section 19–105, vendor payment shall be made for the one pair of permanent cataract glass-

█ The Act and regulations establish six specified types of medical assistance which are "required" to be provided by participating states. See 42 U.S.C. § 1396a(a)(10), as amended by PL–97–35, 42 C.F.R. § 440.210 [11]. Additional types of services are authorized but are considered "optional." See 42 U.S.C. § 1396d(a), 42 C.F.R. § 440.1–440.180. The furnishing of eyeglasses is an optional service. 42 U.S.C. § 1396d(a)(12): "prescribed drugs, dentures, and prosthetic devices; and eyeglasses prescribed by a physician skilled in diseases of the eye, or by an optometrist, whichever the individual may select..." 42 C.F.R. 440.120.

█ Plaintiff's claim of conflict with federal law and regulations, in sum, is that Louisiana's policy of limiting eyeglasses to post cataract patients amounts to a reduction in the amount, duration or scope of a required service solely because of diagnosis, types of illness or condition, which reduction is prohibited by 42 C.F.R. § 440.230, quoted supra, note 3. Plaintiff also argues that the Louisiana eyeglasses plan is not sufficient in amount, duration, and scope to reasonably achieve its purpose as required by 42 C.F.R. 440.230.

In that connection plaintiff cites 42 U.S.C. § 1396d(a)(12):

"For purposes of this title—

(1) The term "medical assistance" means payment of part or all of the cost of the following care and services for [eligible] individuals

\* \* \* \* \* \*

es or contact lenses following cataract surgery only.

\* \* \* \* \* \*"

The Louisiana Medical Assistance Title XIX State Plan, Attachment 3.1–A, Item 12d, as amended May 17, 1982, reads in part:

"Eyeglasses are provided, with limitations as follows:

(1) One pair of permanent cataract glasses following cataract surgery. State Office approval is required when cost is over $100.00.

(2) In the EPSDT Program, and prior approval from local office is required."

Attachment 13.1–B, Item 12d, as amended April 9, 1982, provides:

(12) prescribed drugs, dentures, and prosthetic devices; and eyeglasses prescribed by a physician skilled in diseases of the eye or by an optometrist, whichever the individual may select; ..."

42 C.F.R. § 440.120(d) (1978):

" 'Eyeglasses' means lenses, including frames, and other aids to vision prescribed by a physician skilled in diseases of the eye or an optometrist."

Plaintiff argues that the purpose of the Louisiana program is "the improvement of vision" and that eyeglasses must be furnished to all who have need of improved vision, without regard to cause.

Despite the argument that the Louisiana "eyeglass" program is not sufficient in scope to reasonably achieve its purpose, this court finds that the denomination of the Louisiana "service" in question has been misinterpreted by the plaintiff class. As is discussed in detail below, the Louisiana program does not necessarily provide "eyeglasses," except through the Early Preventive Screening and Detection Program. See Reg. 19–491, La. Pub. Assistance Manual.[12]

Rather, it appears that the Louisiana "service" which is provided to otherwise eligible cataract surgery patients is the issuance of "cataract glasses" (a specialized type of spectacles) or contact lenses following cataract surgery, the express purpose of which is not simply to improve vision, but to artificially replace the patient's natural lens

"d. Eyeglasses. ☒ Provided
 ☐ No limitations
 ☒ With limitations*
* Description provided on attachment 3.1–A under the appropriate number."

11. As a condition of receipt of federal matching funds, states receiving federal reimbursement under the Medicaid program, as Louisiana does, must conform their policies, practices and regulations to the requirements of the Social Security Act and the federal regulations relating to Medicaid eligibility and services. 42 U.S.C. § 1396.

12. Under this program, persons under the age of 21 years are provided eyeglasses and there is no controversy regarding that program.

in cases where it has been surgically removed.[13]

The court notes that at least one circuit [14] has decided a similar issue to the contrary; however, for reasons stated herein, this court concludes that the opinion is inapposite here.

Assuming, however, that the spectacles provided under the Louisiana regulations are more properly to be placed in the category of "eyeglasses" rather than "prosthetic devices" under federal regulation 42 C.F.R. § 440.230, the court finds that such a service is not a "required" service under 42 U.S.C. § 1396a(a)(10) or 42 C.F.R. § 440.-210, and therefore 42 C.F.R. § 440.230(c), upon which plaintiffs primarily rely to demonstrate the illegality of the Louisiana limitation of the eyeglass program based on "diagnosis, type of illness, or condition," is inapplicable, because this restriction applies only to "required" services, whereas the provision of eyeglasses is "optional." [15]

In concluding that the provision of eyeglasses is not a "required" service, this court rejects the argument of the plaintiffs that the otherwise "optional" provision of eyeglasses is transformed from an "optional" to a "required" service by virtue of the fact that it is offered to some Medicaid recipients and therefore is "required" to be also offered to the favored class of "cate- gorically needy" Medicaid recipients, who must be offered medical assistance which is "not . . . less in amount, duration, or scope than the medical assistance made available to any other [categorically needy] individual [or to any other Medicaid recipient not classified as categorically needy]." 42 U.S.C. § 1396a(a)(10)(B).

Plaintiff does not dispute that all Medicaid recipients, including all categorically needy recipients, are provided with the *same* eyeglass service, i.e., post-cataract surgery cataract glasses or contact lenses. The prohibition stated in U.S.C. § 1396a(a)(10)(B) is not violated. An otherwise "optional" service does not become "required" simply because it is voluntarily offered by the State. Therefore, this court concludes that plaintiff is unlikely to establish a conflict between the Louisiana eyeglass program and 42 C.F.R. § 440.-230(c)(1). The prohibition contained in Section 440.230(c)(1) against reduction in services based on medical diagnosis has no application to the Louisiana program because it is not a "required" program. The regulation, by its own terms, is limited to "a service required under §§ 440.210 and 440.-220." As we have seen, the Louisiana program is not "required" by these regulations; instead, it is "optional" under 42 C.F.R. § 440.120.

13. See testimony of Charles Williamson, M.D. (testimony that replacement for removed cornea can be *on* the eye, *in* the eye, or *in front of* the eye, depending on whether contact lens, implanted lens, or cataract glasses are used); but see testimony of James Cole, Dept. of Health & Human Resources (testimony that although cataract glasses and contact lenses could be prosthetic devices, the Louisiana program has not described this service within the prosthetic devices section of its plan, but, rather, has identified this service as "cataract glasses" [placed in section of State Plan denominated, "Eyeglasses."]

14. See *White v. Beal,* 555 F.2d 1146 (3rd Cir. 1977). See also *Simpson v. Wilson,* 480 F.Supp. 97 (D.C.Vt.1979) which follows *White v. Beal.*

15. Based upon the requirements set forth in 42 U.S.C. § 1396a(a)(10), 42 C.F.R. § 440.210 defines "required services" for the categorically needy as those services specified in §§ 440.10 through 440.50 and 440.70. These services are enumerated as:

(a) in-patient hospital services (440.10);
(b) out-patient hospital services and rural health clinic services (440.20);
(c) other laboratory and x-ray services (440.-30);
(d) skilled nursing facility services, EPSDT and family planning (440.40);
(e) physician services (440.50);
(f) home health services (440.70).

The State's eyeglass program is not provided under any of the above six enumerated "required" services, but is provided under Section 440.120, "Prescribed drugs, dentures, prosthetic devices, and eyeglasses." See also the testimony of Bonnie Smith, Department of Health & Human Resources (testimony that the service of provision of eyeglasses is an "optional" service).

Moreover, the regulation proscribes only "arbitrary" reductions in services. The state program appears to this court to be carefully chosen to reach a specific portion of the needy population who have a unique condition—the surgical removal of one or both lenses. As such, it does not appear that the state has "arbitrarily" reduced services based on medical diagnosis. There is a reason for the reduction—the state's limited financial resources considering the large numbers of needy people who have impaired vision because of refractory problems vis-a-vis the much smaller number who undergo cataract surgery.

Addressing plaintiff's alternative statutory argument, the court concludes that there is little likelihood of a conflict between the Louisiana eyeglass program regulations and 42 C.F.R. § 440.230(b), which requires that "each service must be sufficient in amount, duration, and scope to reasonably achieve its purpose." The cataract eyeglasses and contact lens program is apparently sufficient to achieve its "purpose," which can only be to improve the vision of cataract surgery patients by means of giving them a replacement lens.

It appears that plaintiffs have misstated the "purpose" of the state's post-cataract surgery service, under 42 C.F.R. § 440.-230(b), by defining it as the improvement of vision of the *entire* Medicaid-eligible population. Certainly, if such *were* the broad purpose of the state's program, then the limited cataract glasses and contact lens service which is provided would obviously be insufficient to achieve the "purpose." This court does not necessarily agree that 42 C.F.R. § 440.120(d) (1978) dictates the mandatory imposition of such a broad purpose. Rather, the "purpose" of the cataract glasses and contact lens program, as stated above, is much more narrow in scope, i.e., to improve the vision of cataract surgery patients, and, as so stated, the more narrowly drawn "purpose" would be achieved by the amount, duration, and scope of the currently offered service. In fact, at the present time, every cataract surgery patient who is in need of a replacement lens is provided

with one; and, conversely, no other potential recipient, including plaintiff, could possibly be in need of a replacement lens, although it is true such others may be in need of different "aids to vision." See *District of Columbia Podiatry Society v. District of Columbia,* 407 F.Supp. 1259 (D.C.D.C.1975).

Having determined that it is unlikely that the state regulations at issue in the instant case will be found to be inconsistent with any federal statute or regulation, we address the likelihood of success, on the merits, of the constitutional issues raised by the plaintiff class.

▊ The principles of presumption of constitutionality apply to the actions of all lawmaking bodies, including state regulations. *New Orleans Public Service, Inc. v. City of New Orleans,* 281 U.S. 682, 50 S.Ct. 449, 79 L.Ed. 1115 (1930). If an act of a legislative body would be valid only in the event certain circumstances exist, it will be presumed that all such circumstances do in fact exist. *Alabama State Federation of Labor v. McAdory,* 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945); *Ward & Gow v. Krinsky,* 259 U.S. 503, 42 S.Ct. 529, 66 L.Ed. 1033 (1922) (presumption that legislative body understands and appreciates the needs of its own people).

▊ All reasonable doubts must be resolved in favor of the constitutionality of the legislative rule in question. *Corporation Commission of Oklahoma v. Lowe,* 281 U.S. 431, 50 S.Ct. 397, 74 L.Ed. 945 (1930). The question of reasonableness of a legislative rule, if it is within constitutional bounds, is for the rule-making body *exclusively,* and the court cannot substitute its judgment for that of the legislative body. *Mutual Loan Co. v. Martell,* 222 U.S. 225, 32 S.Ct. 74, 56 L.Ed. 175 (1911); *South Carolina State Highway Department v. Barnwell Bros., Inc.,* 303 U.S. 177, 58 S.Ct. 510, 82 L.Ed. 734 (1938), *reh. denied,* 303 U.S. 667, 82 L.Ed. 1124. In order for this court to hold that the state regulation in question is unconstitutional, this court would have to

find that it is plainly [16] and unequivocally [17] unconstitutional.

It is unlikely that the Equal Protection argument advanced by the plaintiff class will succeed on the merits at trial.

 A state may classify persons and objects for the purposes of legitimate legislation. *District of Columbia v. Brooke,* 214 U.S. 138, 29 S.Ct. 560, 53 L.Ed. 941 (1909). The fact of differential treatment does not, *per se,* constitute unconstitutional discrimination. *Carrington v. Rash,* 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965). Classifications are constitutional provided they are reasonable for the purpose of the legislation. *Terre v. Boraas,* 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974); *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972). All reasonable doubts must be resolved in favor of the classification made by the legislative body. *Toombs v. Citizens' Bank of Waynesboro,* 281 U.S. 643, 50 S.Ct. 434, 74 L.Ed. 1088 (1930). Unless a given classification is clearly arbitrary and without any substantial or apparent rational reason for its creation, a court has no right to interfere with the exercise of legislative discretion. *Hauge v. Chicago,* 299 U.S. 387, 57 S.Ct. 241, 81 L.Ed. 297 (1937).

 Especially in the area of economic and social legislation, as in the instant case, judicial review of legislative classification must be exercised with great restraint. So long as the legislative classification in question bears some rational relationship to a conceivable legitimate state, purpose or interest, the rule in question will be upheld as constitutional. *Trimble v. Gordon,* 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977).

This court concludes that it is unlikely that the Louisiana regulations which pre-

vent the plaintiff class from obtaining the eyeglass benefits sought by them will be found to be unconstitutional on Equal Protection grounds.

 Assuming, for purposes of addressing the constitutional issues presented, that cataract glasses and contact lenses are not in the nature of prosthetic devices, but are merely a variety of "eyeglasses," the plaintiff class is not likely to succeed on the merits of a constitutional argument, based upon Equal Protection grounds, that the plaintiff class is unconstitutionally classified within a group for which eyeglass benefits are not available, whereas cataract surgery patients are classified within a group for which eyeglass benefits are available. In the field of economic and social legislation, such as this, the state may make policy choices and is not required to cure an entire evil at once, but, rather, may attack a given problem piecemeal, ignoring certain aspects at times.[18]

 Since the test for review of economic and social legislation such as that in dispute is whether it is "rational," or rationally related to a proper state interest, *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), *reh. denied,* 398 U.S. 914, 90 S.Ct. 1684, 26 L.Ed.2d 80, the state regulations at issue more than pass that test. There is no "invidious discrimination" here because the legislative classes created by the Louisiana regulations (i.e., cataract patients who have had surgery versus those indigents with refractive problems who have not had surgery) advance a legitimate legislative goal in a rational fashion. *Schweiker v. Wilson,* 450 U.S. 221, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981).

The court concludes that it is unlikely that on the merits plaintiff can establish

---

**16.** *New York v. O'Neill,* 359 U.S. 1, 79 S.Ct. 564, 3 L.Ed.2d 585 (1959).

**17.** *Mayo v. Lakeland Highlands Canning Co.,* 309 U.S. 310, 60 S.Ct. 517, 84 L.Ed. 774 (1940).

**18.** *King v. Schweiker,* 647 F.2d 541 (5th Cir. 1981); See also *Maher v. Roe,* 432 U.S. 464, 97 S.Ct. 2376, 53 L.Ed.2d 484 (1977), in which the

Supreme Court held that the equal protection clause did not require a state participating in a Medicaid program to pay the expenses incident to non-therapeutic abortions for indigent women simply because it had made the policy choice to pay the expenses incident to normal childbirth. See *Pushkin v. Califano,* 600 F.2d 486 (5th Cir. 1979).

that the state regulations violate the Equal Protection clause of the Constitution.

This court also concludes that there is little likelihood of success on the merits of the argument of the plaintiff class that the state regulations create an "irrebuttable presumption" that persons who have not had cataract surgery do not have a medical need for eyeglasses.

The "irrebuttable presumption" analysis has been limited to cases involving fundamental rights, *Rogers v. Friedman,* 438 F.Supp. 428 (D.C.Tex.1977), probable juris, noted 435 U.S. 967, 98 S.Ct. 1604, 56 L.Ed.2d 58, aff'd in part, rev'd in part, 440 U.S. 1, 99 S.Ct. 887, 59 L.Ed.2d 100 (1979), *reh. denied,* 441 U.S. 917, 99 S.Ct. 2018, 60 L.Ed.2d 389, and no "fundamental rights" are at stake here.

Furthermore, this court finds that no "irrebuttable presumption" has been made at all, contrary to the argument of plaintiff. The regulations do not imply that plaintiff or those in her class do not need eyeglasses, but simply that such persons do not need artificial replacement lenses which those who have had their natural lenses surgically removed DO require.

Furthermore, this court finds that it is unlikely that the state regulations in dispute will be found to be violative of substantive Due Process, since it is unlikely that the state regulation in question will be found to be arbitrary. *Slochower v. Board of Higher Education of City of New York,* 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956), *reh. denied,* 351 U.S. 944, 76 S.Ct. 843, 100 L.Ed. 1471.

The standard for judicial review of legislation on Due Process grounds is similar to the standard of "minimum rationality" used in determining the merits of a claim of unequal protection of the law. *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980); *Bussey v. Harris,* 611 F.2d 1001 (5th Cir. 1980).

The state regulations in question do not appear to be unreasonable, arbitrary, or capricious, and they do not create an unconstitutional "irrebuttable presumption,"

since the state regulations appear to have a substantial relationship to a permissible state legislative objective.

The court concludes that it is likely that the disputed state regulations are not violative of the Due Process clause of the Constitution. *West Coast Hotel Co. v. Parrish,* 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937).

For the reasons stated, there is little likelihood that plaintiff will prevail on the merits at trial and the plaintiff's motion for preliminary injunction is hereby DENIED.